## MASSACHUSETTS FIRE & MARINE INS. CO. v. SCHNEIDER.*

Circuit Court of Appeals, Fifth Circuit.
November 3, 1928.

No. 5204.

*Rehearing denied December 11, 1928.

T. A. Hammond, of Atlanta, Ga., and Wm. M. Howard, of Augusta, Ga., for appellant.

Rodney S. Cohen, of Augusta, Ga., and J. Wm. Thurmond, of Edgefield, S. C. (Herbert C. Gray, of Augusta, Ga., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Appellee brought suit to recover on a policy of fire insurance of $10,000, issued by appellant, to cover a stock of merchandise in a department store operated by appellee at Fairfax, S. C., and secured a verdict and judgment for $9,948.63. The defense, raised in various ways unnecessary to state in detail, was that the policy was void by reason of a breach of the so-called iron-safe clause in failing to take an inventory and keep and produce proper books.

There was evidence, not rebutted, on behalf of appellee tending to show the following state of facts:

The store at Fairfax was opened for business September 26, 1925, and was destroyed by fire the night of December 24, 1925. The total insurance was $77,000; all policies is-

suing for only three-fourths of the value of the merchandise covered. Before the store opened for business, on September 12, 1925, the date of the policy in suit, a consignment of merchandise of the value of $18,637.98 was received. The invoice for this had been entered in a book, and on its receipt the merchandise was checked and verified with this book, which is the inventory relied on by appellee. Thereafter, up to the day of the fire, merchandise of the total net value of $119,979.96 was added to the stock. The store usually had 10 or 12 clerks, and some times as many as 20 were employed. During the short time the store was open for business the cash sales totaled $40,432.45, and the credit sales only $68.45. The clerks made out sales tickets for each sale, which sales ran from 5 or 10 cents to $30 or $40. Each day the total of the cash sales was entered in the ledger, but the items and prices were not shown. The cash sales slips were not put in the safe, and were destroyed by the fire. A regular set of books was kept, and these with the inventory and all invoices were produced.

The provision of the policy relied on is as follows:

"The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire proof safe at night, and at all times when the premises mentioned in this policy are not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the property hereby insured.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

It is difficult to understand how, under the circumstances, any better inventory could have been made than is shown to have been made in this case. It was sufficient for all purposes. We will dismiss that contention without further comment.

Appellant contends that the failure to preserve and produce the cash sales slips constituted a breach of warranty of the iron-safe clause. No other objection is urged as to the method of keeping the books, nor is fraud suggested.

A similar provision to that above quoted appears in all standard fire policies on merchandise in stores, and it is well settled that it is to receive a reasonable interpretation and may be complied with substantially and not literally. While full legal effect should be given it to prevent fraud or imposition on the insurer, the intent of the parties should be sought, and a practicable application of the clause be made to the facts of each case. See Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460.

A reasonable interpretation of the clause is that the insured agrees to, in good faith, as a prudent man, keep and produce such books as are usual and necessary in the ordinary conduct of his business.

In this connection there was uncontradicted testimony tending to show that it is not customary to preserve cash sale slips in a business such as conducted by appellee, except for a limited time, say three to six months, and that it is impracticable, if not impossible, to keep them in a place safe from fire.

Appellant relies principally on our decision in Wright v. Union Ins. Co. (C. C. A.) 13 F.(2d) 612. We think that case may be distinguished from the one at bar. There the cash sales were negligible, and we were dealing with books purporting to show credit sales. It is practicable for the insured to keep a record of sales on credit, showing items and prices. This is necessary for his own protection, and no prudent man would neglect to do so. The insurer has the right to rely upon this obvious method of keeping books. That he will do so may be said to be within the contemplation of the parties. On the other hand, thousands of establishments conduct large cash businesses with no more record of sales than a cash register. Surely a reasonable interpretation of the iron-safe clause does not require us to say, in effect, that insurance running into the millions is void, and that the premiums for protection have been paid in vain, if the insured fails to record his cash sales in detail in such es-

tablishments. We find no merit in this contention.

■■ Testimony was admitted over objection tending to show that appellee's margin of profit on cash sales was 33⅓ per cent. on cost, or, in other words, that the gross amount of sales included 25 per cent. profit. As the policy was not void for breach of warranty, appellee was not limited to producing his books, and parole evidence was admissible to prove the loss. One well-recognized method of doing so is to show the amount of total sales, reduced to cost by proving the margin of profit, and by deducting that from the value of the goods shown by the inventory, together with those thereafter purchased to show what was in the premises at the time of the fire. There was also testimony tending to show that from the books, inventory, and invoices produced, estimating the profit on sales at 25 per cent., the total loss was $102,139.22. The way was open to appellant to rebut this, but no attempt was made to do so. This evidence was not objectionable as tending to vary or supplement the books.

Other errors assigned all run to the contentions above considered, and it is unnecessary to refer to them in detail. The record presents no reversible error.

Affirmed.