## NATIONAL BEN FRANKLIN FIRE INS. CO. v. STUCKEY.

### No. 7648.

Circuit Court of Appeals, Fifth Circuit.

Nov. 5, 1935.

Alex. W. Smith, Jr., of Atlanta, Ga., and John S. Adams, of Dublin, Ga., for appellant.

R. M. Daley, of Dublin, Ga., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellee on two fire insurance policies issued to him by appellant. One of the policies was in the amount of $4,500 and covered $2,000 on a one-story brick building occupied by appellee as a general store, situated in Rhine, Ga., $2,000 on stock of merchandise in the store, and $500 on store furniture and fixtures. The other policy was in the amount of $5,000, and covered a two-story building situated in the same town. The buildings covered by the two policies adjoined and constituted practically one building. A fire occurred on September 21, 1932. In his proof of loss on account of that fire appellee claimed under the first-mentioned policy that the loss and damage to the stock of merchandise was approximately $2,550, loss and damage to furniture and fixtures $516.50, and loss and damage to building $1,410.58; and under the other policy loss and damage to the insured building $7,329.63. This suit sought to recover under the first-mentioned policy: $2,000 on account of alleged loss and damage to stock of merchandise, $1,410.58 for loss and damage to the one story building, and $500 for loss and damage to furniture and fixtures; and to recover under the other policy $5,000 for loss and damage to the two-story brick building, making a total claimed loss and damage under the two policies of $8,910.58. In its answer to the petition the appellant set up the defense that the appellee, J. O. Stuckey, Jennings Stuckey, Will McCloud, and other named persons entered into a conspiracy to defraud the appellant out of $9,500, alleging that in pursuance of that conspiracy Merritt Stuckey and others, prior to September 19, 1932, moved away and secreted parts of the insured stock of goods, that on the night of September 19, 1932, Jennings Stuckey and another named conspirator attempted to destroy by fire the insured store and the insured personal property then remaining therein; that on September 21, 1932, said Will McCloud, employed by appellee for that purpose, committed arson by setting fire to and burning the insured store and the personal property then therein; that after said fire appellee filed with appellant a false and fraudulent claim or proof of loss in which he claimed the full amount of the value of the insured buildings and the full value of the insured personal property, then knowing that all of said personal property had not been destroyed by fire and that he had not suffered damage to personal property in the amount claimed; and that appellee filed this suit seeking to recover the entire amount of the insurance under the policies sued on, with full knowledge that he had not sustained the loss stated in said false and fraudulent claim or proof of loss. The trial resulted in a verdict and judgment in favor of the plaintiffs, appellee here. Assignments of error are based on rulings on evidence made by the court, and on the action of the court in giving and refusing instructions to the jury.

On the direct examination of Jess Cannington, a witness for the appellant, after the witness had stated that there had been a conversation between the witness and Will McCloud about the fire, the witness was asked the question, "What was the conversation?" The court sustained appellant's objection to that question. Upon the court stating, "I will sustain the objection," counsel for the appellant made the following statement as to the testimony expected to be elected by the question:

"We expect to prove by this witness that he and McCloud were on a raid looking for whiskey on Monday after the first fire and before the second fire; that McCloud told this witness that Hilliard and

Jennings Stuckey had made a damn bum job of burning the old man's building; that if Stuckey would give him $50.00 that he, McCloud, would see that the building went away from here. That later McCloud came back to this witness and advised him that he had seen Mr. Stuckey, and that Stuckey, had agreed to pay him to burn the building; and that he, McCloud, endeavored to get this witness to agree that he would keep his mouth shut about it, telling the witness that it would be worth a great deal to him if he would keep his mouth shut and say nothing about it; that upon this witness' refusal to make any such agreement McCloud stated that you have a job here and you want to keep it, and if you don't keep your mouth shut about what we are fixing to do you will lose it; that McCloud endeavored to get this witness to join with him in the criminal enterprise of burning the store, telling him that there would be plenty in it for both of them, if they could put the job over right, or words to that effect. That this witness refused to join in the enterprise, and that after the second fire McCloud went to him and called him off and told him that he was talking too damn much, that he was going to get both of them in trouble; that McCloud was seen on the street of Rhine after the burning of the building with a new suit of overalls, jacket, pants, new tan slippers and other accessories, and told this witness that this was part of what he got out of the fire; that McCloud told this witness further that he could still get $50 out of the fire if he would keep his mouth shut and quit talking so damn much."

It appears from statements made by the court with reference to its ruling on the objection to the question that that ruling was based on two grounds: (1) That a prima facie case of a conspiracy between appellee and McCloud had not been made out by evidence; (2) that even if evidence adduced tended to prove such a conspiracy, that conspiracy ended with the fire, and the called for declaration or statement by McCloud would only be admissible against him.

Before the above-mentioned question was asked and ruled on, evidence to the following effect had been adduced: The fire which caused the damage alleged in the petition was discovered about 1 o'clock Tuesday morning. About 4 o'clock of the immediately preceding Sunday morning there was another fire in the rear of the insured building which was put out before any substantial damage was done. A few minutes before an explosion which was followed by the first fire, Dock Hilliard and Jennings Stuckey, the latter a son of the appellee who ran appellee's store with him, were seen right back of the insured building, having a five-gallon can with them. The smoke from the first fire smelled like kerosene, and that fire made a kind of blue looking blaze like burning kerosene or gasoline. Hilliard was seen running away following the explosion. After appellee's store was closed Monday night, Will McCloud, who died prior to the trial, was seen going upstairs into the insured building with a five-gallon can of gasoline, and prior to the fire was not seen to return therefrom. During the week immediately preceding the second fire, with the knowledge and assent of appellee, merchandise was removed from appellee's store in truckloads and at nighttime, and concealed, the appellee himself getting some of that merchandise ready to be so removed from his store. After the second fire was discovered, substantially all the merchandise remaining in the store was removed therefrom. The loss and damage to the merchandise remaining in the store when that fire started was in an amount less than $170. In his sworn to proof of loss appellee claimed that the loss and damage by fire to his merchandise was approximately $2,550. On the Thursday after the second fire Jess Cannington and Will McCloud, both of whom were marshals of the town of Rhine, by the back door together went into the store appellee then was occupying. When the two walked into the store, appellee was in the front part of it. He came to the back end and said, "Everything about to get quiet?" Upon Cannington making a reply to the effect that everything was quiet, appellee said: "I am speaking about this fire. Hell, if I did burn it, it was mine," and then went back to the front part of the store. Appellee was not in Rhine at the time of the first fire. He stated that he went to Brunswick Saturday night; that he was sick when he went to Brunswick and sick when he got back.

Evidence of the surreptitious removal and concealment by, or with the assent of, the insured, of insured merchandise from the place named in the policy, and that such removal was soon followed by a fire, evidently incendiary, causing loss or damage to merchandise remaining in that place

grossly less in amount than the amount of loss and damage to merchandise claimed by the insured in his sworn proof of loss and in his suit on the policy, has some tendency to prove that the insured planned the fire with intent to defraud the insurer, especially in the absence of evidence that any one other than the insured had a motive to cause the fire or would be benefited thereby. Some support for a finding that the insured and another or others conspired to bring about a fire occurring in the circumstances stated is furnished by such evidence as that just mentioned in connection with other evidence to the effect that the fire actually was started by another person who was on familiar terms with the insured and who apparently could not profit by the fire otherwise than as a paid agent, and who, upon meeting the insured in a private place soon after the fire, was asked by the insured, referring to the fire, "Everything about to get quiet?" that question being followed by an implied admission by the insured that he was responsible for the fire. The just referred to incident well might be regarded as a circumstance indicating that the insured and McCloud had a common interest in the fire and its cause ceasing to be a subject of talk or inquiry. We are of opinion that the above referred to evidence, direct and circumstantial, tended to prove a conspiracy to which the appellee and Will McCloud were parties.

■ Co-operation or concert of action between appellee and McCloud in bringing about the fire was provable by circumstantial evidence. Shook v. United States (C. C. A.) 10 F.(2d) 151; Shaw v. United States (C. C. A.) 41 F.(2d) 26; State v. Edwards, 173 S. C. 161, 175 S. E. 277; Patrick v. State, 18 Ala. App. 335, 92 So. 87. Acts and declarations of one conspirator done and made while the conspiracy is pending, and in furtherance of its object, are admissible against his coconspirator. Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 249, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Mayola v. United States (C. C. A.) 71 F. (2d) 65; Minner v. United States (C. C. A.) 57 F.(2d) 506.

■ The proffered testimony of Jess Cannington tended to prove that McCloud, shown by previously admitted evidence to have been a coconspirator with appellee, sought by what he said to the witness to further the object of the conspiracy by inducing the witness to join in the enterprise and to "keep his mouth shut and quit talking so damn much." That testimony was not rendered inadmissible by the fact that the conversation asked about occurred after the fire. The burning of the building and its contents was not the object of the conspiracy. The object of the conspiracy was to defraud the insurer by enabling the insured to assert and maintain a grossly excessive claim of loss or damage caused by the fire. The burning of the building and its contents was an incident of the conspiracy, not its end or object. The proffered evidence tended to prove conduct of a coconspirator in furtherance of the conspiracy, the object of which had not been consummated when the incident inquired about occurred. Jack v. Mutual Reserve Fund Life Ass'n (C. C. A.) 113 F. 49, 57; International Indemnity Co. v. Lehman (C. C. A.) 28 F.(2d) 1, certiorari denied 278 U. S. 648, 49 S. Ct. 83, 73 L. Ed. 561.

We conclude that the above-mentioned ruling was reversible error. We think it unnecessary to pass on other rulings which were assigned as error. The questions raised by those rulings may not arise in another trial. Because of the above-mentioned error, the judgment is reversed.