## NATIONAL–BEN FRANKLIN FIRE INS. CO. v. STUCKEY.

### No. 8176.

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1936.

Alex W. Smith, Jr., of Atlanta, Ga., and J. S. Adams, of Dublin, Ga., for appellant.

R. M. Daley, of Dublin, Ga., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is the second appeal to this court from a judgment for the insured in this case. 79 F.(2d) 631. Following the reversal of the first judgment, a second trial was had and judgment rendered for plaintiff for $8,910.55.

The action was upon two policies of fire insurance, one for $5,000 on a two-story brick store, and the other for $4,500 on items as follows: $2,000 on a one-story brick store adjoining the above stated two-story brick store; $2,000 on the stock of merchandise contained in the one-story store; and $500 on the store furniture and fixtures contained in the one-story store.

The assured alleged in his petition that he had fully complied with each and every term and condition of the contracts of insurance. These allegations were denied by the defendant and the case went to the jury upon that issue, among others. The policy for $4,500 on store, stock, and fixtures contained a warranty to keep a set of books which would present a complete record of the business transacted, including all sales, both for cash and credit, from date of inventory.

On the trial the appellee's son, Jennings Stuckey, was introduced as a witness for his father. He testified that he was clerking in his father's store at the time of the fire; that he kept all the books and records for the business, without assistance from any one, having complete charge. He was at home at the time the fire originated, but went to the store and found the building burning, the books and records being in the safe. He identified two books, one

of which purported to contain an inventory of stock and fixtures on December 31, 1931, and the other, captioned "Cash Book for the year 1932," showed the total cash and credit sales from the date of said inventory to the date of the fire, but only the total sales for each day were given therein. Each page was divided into five separate columns, as follows:

First column—"Total Cash Received."

Second column—"Received on Account."

Third column—"Net Cash Sales."

Fourth column—"Net Charged Sales."

Fifth column—"Total Net Sales, Cash and Charged."

■ Neither of these books showed the individual or particular credit sales. These items were kept in a third book which was preserved in the safe at the time of the fire, and, if not in court during the trial, was in the witness' home. This book was not introduced in evidence, but the witness was permitted to testify, over the objection and exception of the appellant, that appellee made 10 per cent. profit on cash and 20' per cent. on credit sales.

The amount of stock on hand was arrived at by mathematical calculations after deducting the customary profits from the aggregates of cash and credit sales. This was error, so far as the credit sales were concerned, because, from the undisputed testimony, the missing book contained the best evidence of the credit sales of which the case was susceptible, and was the evidence which the parties, in the contract of insurance, had agreed should be produced.

■ So far as total cash sales are concerned, when no record of particular sales is kept, such evidence is admissible [Massachusetts Fire & Marine Insurance Company v. Schneider (C.C.A.) 28 F.(2d) 658], but as to credit sales the contrary has been held by this court in Wright v. Union Insurance Company, 13 F.(2d) 612, where such book containing the record was destroyed in the fire which destroyed the stock of goods. In the Wright Case, supra, 13 F.(2d) 612, at page 613, the court said:

"The entries of credit sales in the ledger are clearly insufficient for that purpose, as the amount of goods sold under the general description is not shown. Nor is it possible to ascertain that amount, so as to arrive at what was left on hand, by including in such entries the prices charged upon the credit sales that were made. A charge made and entered indicates nothing without a description of the goods. Only by such description is it possible for an accountant to discover whether the goods were sold at, above, or below cost or value. If plaintiff sold at a loss the stock of goods destroyed by fire was smaller than it would have been if he had sold at cost, or at a profit. On the other hand, if he sold at a profit, his stock was larger than it would have been if he had sold at cost, or at a loss. It follows that the books produced in evidence failed to disclose the extent of plaintiff's loss.

"It was not permissible for plaintiff to show by his oral testimony that he sold at a profit, because the parties stipulated that the books should present a complete record of business transactions, including all sales."

The underlying distinction between cash and credit entries is fully pointed out by Judge Foster in the Schneider Case, supra, 28 F.(2d) 658, at page 659: "Appellant relies principally on our decision in Wright v. Union Ins. Co. (C.C.A.) 13 F.(2d) 612. We think that case may be distinguished from the one at bar. There the cash sales were negligible, and we were dealing with books purporting to show credit sales. It is practicable for the insured to keep a record of sales on credit, showing items and prices. This is necessary for his own protection, and no prudent man would neglect to do so. The insurer has the right to rely upon this obvious method of keeping books. That he will do so may be said to be within the contemplation of the parties."

■ In the absence of the book of credit sales, the evidence is not sufficient to support the verdict without the oral testimony which was erroneously admitted. The judgment, like the verdict, is single and entire. Therefore, the judgment is reversed, the verdict set aside, and the cause remanded for further proceedings not inconsistent with this opinion.