**Charles Arthur SMITH and Linda Sue Smith, Appellants,**

v.

**HOFER, INC., Respondent.**

**No. WD 36146.**

Missouri Court of Appeals,
Western District.

Sept. 24, 1985.

As Modified Dec. 3, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 3, 1985.

Charles D. Curless, Lamar, for appellants.

Rodney E. Loomer, Springfield, for respondent.

Before DIXON, P.J., and SOMERVILLE and NUGENT, JJ.

DIXON, Presiding Judge.

Plaintiffs appeal a jury verdict for defendant in an action for damages arising from a fire alleged to have been caused by defendant's truck colliding with plaintiffs' building.

Plaintiffs complain that hearsay evidence of conspiracy to commit fraud was admitted, that no evidence of arson or fraud should have been admitted, that the trial court should have granted a mistrial during voir dire because of a mention of insurance, and that the trial court should have granted a continuance during trial because of the absence of a witness.

A shop owned by plaintiffs was destroyed by fire which started after a tractor-trailer truck owned by defendant and driven by Cecil Balster struck the south garage door of the shop. When the truck struck the garage door, the door knocked over a 55-gallon can of paint thinner causing it to spill onto the floor. The paint thinner had been placed behind the door by plaintiff Charles Smith or his employee, John Thomason, on the evening before the fire.

In addition to being a close personal friend of plaintiff Charles Smith, Balster also had worked for him, had been indebted to him, and, at the time of the occurrence, was renting and living in a trailer house owned by plaintiffs, which was located near the shop.

At the time of the fire, Balster was employed as an over-the-road truck driver for defendant. On the day before the fire, Balster had driven from defendant's terminal in Pittsburg, Kansas, to Harrison, Arkansas, where he obtained a load. He thereafter returned to his home in Lamar, Missouri, arriving at approximately 6:00 to 6:30 p.m. Balster testified that, on the day preceding the fire, the truck he was driving for defendant continued to miss or "cut out" because of a faulty fuel filter. Balster further testified that he decided to have plaintiff Charles Smith change the fuel filter on the truck as he was returning from Harrison, Arkansas, to Lamar, Missouri, on January 25th. Although plaintiff Charles Smith was working in the diesel shop until approximately 10:00 p.m. on the night of the 25th, Balster didn't drive the tractor-trailer unit to the diesel shop until somewhere around 3:30 to 4:00 a.m. on January 26, 1982.

According to Balster, somewhere between 3:30 a.m. and 4:00 a.m., he drove the subject unit from his trailer house approximately one quarter mile to plaintiffs' diesel shop. Although he had never experienced any problems with the brakes on the truck, as he turned into the driveway of plaintiffs' shop and attempted to stop, the brakes suddenly and unexpectedly failed. Balster knew that plaintiff Charles Smith would not be at the shop at that time of the morning, but he intended to wake him to get him to come to the shop and change the fuel filter.

At the time of the occurrence and for several weeks before and after, John Thomason was an employee of plaintiff Charles Smith. Mark Cross was an over-the-road truck driver who lived in Lamar, Missouri. Cross testified by deposition that, shortly before the fire which occurred on January 26, 1982, he was approached by Thomason at the Apco service station located approximately a mile from the shop. At that time, Thomason offered Cross either $2,000 or $4,000 to drive the tractor-trailer truck he operated into the south garage door of plaintiffs' shop. Thomason told Cross that there would be a 55-gallon drum of paint thinner located directly behind the garage door and that all Cross had to do was drive the truck into the south door, and he would be paid. Cross rejected the offer. Approximately two weeks later he learned that the garage burned.

Prior to the taking of his deposition on December 9, 1983, Cross gave a sworn statement in which he set forth the offer made by Thomason to pay him to drive the tractor-trailer into the door of plaintiffs' shop. This statement was revealed to plaintiffs' attorney who advised plaintiffs of the statement and notified them that Cross' deposition was to be taken on a certain date. On the day before the deposition was to be taken, although plaintiffs had never heard of Mark Cross, plaintiffs drove from Lamar to Carthage, Missouri, to locate him at his place of employment. When Cross told plaintiffs that he had previously given a sworn statement and was going to testify by deposition that John Thomason had offered him money to drive his tractor-trailer unit into the south door of plaintiffs' garage, plaintiff Charles Smith suggested that Cross should change his testimony.

John Thomason gave a court reporter a statement under oath on May 11, 1982, saying plaintiff Charles Smith had offered $4,000 to have someone run a truck into the shop, and indicating that he had approached Mark Cross on plaintiffs' behalf and offered him money to do it. The content of this statement was related by the court reporter from handwritten notes because Thomason had obtained and kept the reporter's stenographic notes. Thomason later, by deposition, denied that he had made such an offer to Cross. Neither Cross nor Thomason appeared at trial. Their testimony was preserved through

depositions. Some other details of evidence will be noted in connection with the points raised.

■ If the trial court's admission of the evidence may be sustained on any ground, it does not matter what ground the parties urge in support of the court's ruling. Even if the deposition of Cross is considered hearsay, it is admissible under the exception to the hearsay rule for the statements of co-conspirators made in furtherance of the conspiracy. *State v. Garton*, 371 S.W.2d 283, 287–88 (Mo.1963); *State v. McCollum*, 598 S.W.2d 198, 200 (Mo.App. 1980). The existence of the conspiracy necessary to permit admission of the statements of a co-conspirator may be shown by circumstantial evidence. *State v. Baldwin*, 358 S.W.2d 18, 24 (Mo.1962).

In the instant case, the facts and circumstances shown in the evidence strongly support the existence of a conspiracy to destroy the plaintiffs' building for the purpose of collecting damages. The defendant's purported agent and truck driver, Balster, lived in a trailer owned by the plaintiffs, was indebted to the plaintiffs, and was a close friend of plaintiff Charles Smith. The trailer in which he lived was located adjacent to the premises that were destroyed. On the day before the fire, Balster drove his truck many miles without difficulty. He arrived at the trailer adjacent to the plaintiffs' place of business at about 6 p.m., and although plaintiff Charles Smith was working in the garage, did not take his truck there to have it repaired for its ostensible "fuel problem" until the next morning. At 3:30 or 4:00 in the morning, Balster drove the truck to the plaintiffs' building, crashed into the door of the building upsetting the barrel of paint thinner, and claimed either the brakes did not work or the truck skidded. There was no evidence of skid marks and Balster had filled out a trip log for the haul made on the previous day which indicated no difficulty with the truck brakes nor any other mechanical difficulty. Balster moved the truck away from the burning garage without difficulty. Plaintiff Charles Smith,

when the fire was discovered, did not use an available fire extinguisher nor the telephone, but made an attempt to save some minor items from the building.

Plaintiff Charles Smith's testimony concerning the time when the paint thinner was purchased and stored in the building was contradictory, as well as his testimony regarding the location of the thinner and the manner of its placement in the building. There was evidence plaintiff Charles Smith removed and stored a large number of parts in a separate trailer prior to the fire, and this trailer was taken away from the premises shortly after the fire. Thomason was an employee of plaintiff Charles Smith, was admittedly in dire straits and needed his job. The evidence showed the plaintiffs were in financial difficulty. Thomason admitted to an officer of the defendant that the fire was intentionally set. No customer's work was in the building on the night of the fire.

The plaintiffs, when told of Cross's statements, went to Cross and urged him to agree with the statements made by Thomason concerning the fire, and specifically requested Cross to change his story concerning Thomason's offer to him.

These circumstances are sufficient to constitute the existence of a conspiracy sufficient to admit the statements of Thomason that he had been offered $4,000 by plaintiff Charles Smith to find somebody to run into the garage and cause the fire as well as Thomason's statements to Cross that he would pay Cross to run into the door of the garage. There was no error in the admission of these statements.

■ While it is true that the law concerning co-conspirators' statements has developed in the criminal context, there is no reason why a statement that can be used to convict of a criminal offense and impose imprisonment—or even death—cannot be utilized to prove a relevant fact in a civil action arising out of the subject matter of the conspiracy. In a remarkably analogous case, a federal court has applied the rule to a civil action. In *National Ben Franklin Fire Ins. Co. v. Stuckey*, 79 F.2d 631 (5th

Cir.1935), the plaintiff sought to recover on a fire policy. The defendant offered proof of a co-conspirator's statements concerning payment for causing the fire. *Id.* at 632. The statements were objected to and the trial court sustained the objection. *Id.* The Fifth Circuit found sufficient evidence of the conspiracy and reversed for error in refusing to admit the co-conspirator's statements. *Id.* at 634.

Plaintiffs contend that the defendant's evidence of arson was improperly before the jury since the defendant had not pleaded arson as an affirmative defense. Taking the issue as it is presented, the admission of the evidence has nothing to do with arson as an affirmative defense. The basis of plaintiffs' claim of defendant Hofer's liability is derivative. Plaintiffs' pleading was based upon the acts of the driver as Hofer's agent, acting within the course and scope of the agency. Agency was denied and, thus, the course and scope issue was contested. Defendant was entitled to prove the facts that indicated the driver was not acting within the course and scope of his employment. Evidence that the driver had conspired with another to commit a crime would negate defendant's liability under the doctrine of respondeat superior. Evidence of threats of, and preparation for, arson are admissible to prove arson. *State v. Berkowitz,* 325 Mo. 519, 528–529, 29 S.W.2d 150, 154 (1930); *State v. Crawford,* 99 Mo. 74, 77–78, 12 S.W. 354, 355 (1889). There is no reason why such evidence is not admissible in a civil action where relevant. Nor does it matter that the declarant Thomason is not the plaintiff in the civil action. It matters not in the proof of Balster's non-agency that he was conspiring with Thomason alone or with Thomason acting on behalf of plaintiffs. In either event, Balster was not acting within his agency for defendant.

■ Nor is the offer of such evidence limited to rebutting plaintiffs' proof. Defendant may offer independent evidence which establishes the non-existence of an essential element of the plaintiffs' case under the general denial and without pleading such facts as an affirmative defense. In the analogous situation of the presentation of sole cause evidence, the courts have so held. *Birmingham v. Smith,* 420 S.W.2d 514 (Mo.1967); *Hoehn v. Hampton,* 483 S.W.2d 403 (Mo.App.1972); *Fuerst v. St. Louis Public Service Co.,* 368 S.W.2d 550 (Mo.App.1963); *Coffel v. Spradley,* 495 S.W.2d 735 (Mo.App.1973). In *Fuerst,* that evidence was as to third party's actions claimed to be the sole cause of the accident.

■ The issue as to the claim that a mistrial should have been given arises in the following context. During voir dire examination by plaintiffs, several of the jurors answered in response to questions relating to their experiences with buildings that burned. Several jurors had had fires in a garage and in dwellings. Follow-up questions were asked about claims, and several jurors indicted that insurance was involved and claims were paid. After defendant had conducted a substantial amount of voir dire, the following question was asked by defense counsel:

> MR. LOOMER: There's been some questions by George [Plaintiffs' counsel] relative to who actually is the defendant in this case. Do you all understand that the defendant in this case is not an insurance company—the defendant is Hofer, Inc.

> MR. NICHOLS: Your Honor, I'm going to object to that. May we approach the bench?

Plaintiffs' counsel requested a mistrial, which was denied, and the court sustained the objection and instructed the jury as follows:

> THE COURT: Ladies and gentlemen, The Court is instructing you to disregard the last statement by Mr. Loomer as to who is not the party. Continue, Mr. Loomer.

Not every reference to insurance constitutes reversible error. *Means v. Sears, Roebuck & Co.,* 550 S.W.2d 780, 787 (Mo. banc 1977). *Means* and *Gray v. Williams,* 289 S.W.2d 463 (Mo.App.1956), were both cases in which a single reference to insurance was made, and the court sustained the

denial of a mistrial. The language of *Means* is particularly relevant to the instant case: "The trial court is in the most advantageous position to determine whether the issue injected into the case was done in good or bad faith. The action of the trial court will not be lightly disturbed." *Means*, 550 S.W.2d at 788. There is no reason to disturb the ruling of the trial court in the instant case.

Finally, plaintiffs urge error in the denial of a continuance during trial. Just before noon on the last day of trial, defendant rested. Defendant had introduced the deposition of the witness Cross and plaintiffs were proposing to use Thomason as a witness to refute the statements purportedly made by Thomason to Cross. Counsel for the plaintiffs notified the court that Thomason had been subpoenaed for all three days of the trial and that he had been there at least a part of the time and had been instructed to return at 9 a.m. on the day in question. Counsel indicated to the court at 1:00 that Thomason could not be found and that they needed his testimony for rebuttal. After some colloquy with counsel, the court indicated that it was considering the oral motion for continuance and suggested the reading of the deposition. The court indicated the witness would be considered unavailable under the circumstances. Counsel for the plaintiffs indicated they had not fully examined the deposition with that in mind and asked for some time to do so. After a recess, the court again conducted a conference with counsel and asked if they had been able to locate Thomason and it was reported that they had not, although it was indicated that he was on his way to court and had had car trouble. After that colloquy, the court then resumed, and the plaintiffs called Balster as a rebuttal witness. After his testimony was completed, another colloquy with counsel occurred. At that time counsel reported to the court that they were prepared to go forward with the deposition. The court then told the jury that a witness who had been having car trouble was on his way and that they would take up some other matters out of the hearing of the jury. That was done.

The court then undertook another off-the-record conference with counsel and stated for the record that it was then a quarter until 3:00, almost three hours after defendant had rested and over an hour since the telephone call indicating the imminent arrival of the witness. The court then said:

"It's my understanding that the plaintiffs and defendants are ready to just go along and use the deposition, because they're not sure if the guy will show or when, is that correct?

MR. NICHOLS [for plaintiffs]: That's correct, Your Honor.

MR. BICKEL [for plaintiffs]: We appreciate The Court's patience in allowing us to wait this long.

THE COURT: All right. We'll go ahead and start. (Whereupon the proceedings returned to open court:)

■ It is apparent from the excerpted transcript references last shown that plaintiffs did not insist upon the continuance but took advantage of the court's willingness to declare the unavailability of the witness and permit his deposition to be read. There simply was no ruling denying the continuance, and, even if the trial court had denied the continuance, it would have been purely a matter of discretion under the circumstances of this case, and the discretion of the trial court in such circumstances is a broad discretion and will not be reversed unless there is an abuse of discretion. *Phillips v. State*, 639 S.W.2d 270, 275 (Mo.App.1982).

■ The plaintiff Smith also contends that the trial court improperly admitted the deposition of the witness Cross because there was no proof he was a nonresident of the County in which the trial was held. Rule 57.07(a)(3). The proof is unequivocal that the witness resided in Milford. Milford is within the limits of Barton County, a matter of which we take judicial notice and which the plaintiff offered to prove by other means if not so taken by the trial court. *Trautmann v. Hamel*, 358 S.W.2d 803, 806 (Mo.1962).

Judgment affirmed.

All concur.