**Charles BAILEY and Virgie Bailey,
Plaintiffs/Appellants,**

v.

**CAMERON MUTUAL INSURANCE
COMPANY and Brown & James,
P.C., Defendants/Respondents.**

**No. ED 82427.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 7, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 17, 2003.

Application for Transfer Denied
Jan. 27, 2004.

Arthur G. Muegler, Jr., St. Louis, MO, for appellant.

Robert W. Cockerham, Michael Ward & Teresa M. Young, St. Louis, MO, for respondent.

WILLIAM H. CRANDALL, JR., Judge.

Plaintiffs, Charles Bailey and Virgie Bailey (hereinafter referred to jointly as "Bailey"), brought an action against defendant, Cameron Mutual Insurance Company (hereinafter "Cameron")[1] for loss sustained in a fire. Bailey's petition was in four counts: civil conspiracy, fraud, breach of contract, and vexatious refusal to pay. Bailey appeals from the trial court's judgment which dismissed with prejudice his fraud count and which, pursuant to a jury verdict, found in favor of Cameron on the breach of contract and vexatious refusal counts. He also appeals from the trial court's judgment in favor of Cameron on its declaratory judgment action. We affirm.

At approximately 2:00 a.m. on July 20, 1999, Bailey's home suffered extensive fire damage. At that time, there was in effect an insurance policy with Cameron. The policy contained the following limits to coverage: $110,000.00 for the dwelling,

---

**1.** Bailey brought a civil conspiracy against other named defendants, but dismissed that count and that count is not the subject of this appeal. We, therefore, address this appeal only as it relates to defendant-Cameron.

$11,000.00 for garages, $55,000.00 for personal property, and $11,000.00 for loss of use and for other miscellaneous coverages. Bailey notified Cameron of the fire. At about 2:00 p.m. on July 20, Cameron's claims adjuster arrived at the fire scene to investigate. In September 1999, Bailey filed a proof of loss with Cameron, claiming a total loss and seeking indemnification for the policy limits. Cameron refused to pay any portion of the claim. Cameron alleged, among other defenses, an arson defense, claiming that Bailey's son, Clinton Bailey, at the direction of his father, Charles, intentionally set the fire.

Bailey brought the present action. The trial court dismissed with prejudice the conspiracy and fraud counts (Counts I and II respectively). Cameron then filed a counterclaim for declaratory judgment, seeking a declaration that Bailey was barred from recovering under the insurance policy. Among the grounds Cameron alleged as a bar to recovery under the insurance policy were Bailey's failure to cooperate with its investigation, his failure to submit to examination under oath, his failure to provide an accurate inventory of his damaged personal property, and his part in intentionally setting the fire. After a trial, the jury found in favor of Cameron on the breach of contract and vexatious refusal to pay counts (Counts III and IV respectively) and the trial court entered judgment on those counts in accordance with the verdicts. The court also found in favor of Cameron on its declaratory judgment action. Bailey filed a motion for judgment notwithstanding the verdict or, alternatively, a motion for new trial on the basis of newly discovered evidence of allegedly perjured testimony implicating Bailey in setting the fire. The court denied the motion. Bailey appeals from the dismissal of Count II for fraud, from the judgment in favor of Cameron on Count III for breach of contract and Count IV for vexa-

tious refusal to pay, and from the judgment in favor of Cameron in its declaratory judgment action.

■ In his first point, Bailey contends that the trial court erred in admitting the testimony of Heather Bailey that her father, Clinton, admitted to setting the fire under orders from her grandfather, Charles.

■ Admissibility of evidence is within the sound discretion of the trial court. *Fierstein v. DePaul Health Center,* 24 S.W.3d 220, 225 (Mo.App. E.D.2000). If the trial court's admission of evidence can be sustained on any ground, this court will affirm. *Smith v. Hofer, Inc.,* 701 S.W.2d 451, 454 (Mo.App. W.D.1985).

■ Bailey argues that Clinton's statement was inadmissible as hearsay. Cameron counters that the statement was admissible, among other reasons, as a declaration against interest. Declarations against interest are those made by persons not a party to or in privity with a party to the suit, are secondary evidence, and are admissible as an exception to the hearsay rule only if the declarant is unavailable as a witness. *Id.* To be admissible under that particular exception to the hearsay rule, the following elements must be met: (1) declarant is not available as a witness; (2) the statement, when made, pertains to facts against declarant's apparent penal interest; (3) the declaration involves a fact that is personally cognizable to declarant; and (4) the circumstances under which the declaration was made renders it improbable that a motive to falsify exists. *Nettie's Flower Garden, Inc. v. SIS, Inc.,* 869 S.W.2d 226, 230 (Mo.App. E.D.1993).

Here, Clinton was not a party to the action and his statement was admissible as a declaration against his penal interest. The elements necessary for the admission

of the declaration against interest were met. First, Clinton was not available to Cameron as a witness. Cameron presented evidence that a special process server was unsuccessful in serving Clinton with a subpoena on two occasions prior to trial. Clinton did not testify until Bailey's rebuttal evidence was presented. Second, Clinton's statement that he committed arson pertained to a matter against his penal interest, because it could subject him to criminal liability. Third, his starting the fire under Charles's direction was a fact personally cognizable to him. Finally, his making the statement in front of his ex-wife and daughter, Heather, in response to ex-wife's direct question as to whether he set the fire were circumstances which rendered it improbable that he had a motive to falsify at the time he made the statement. Under these circumstances, Clinton's statement was admissible as a declaration against penal interest and was not excluded by the hearsay rule. The trial court did not err in admitting Heather's testimony. Bailey's first point is denied.

■ In his second point, Bailey asserts that the trial court erred in admitting the testimony of two state certified fire investigators, Robert Jacobsen and Robert Wysong, that the fire was intentionally set. He argues that not only did the testimony not satisfy the requirements for the admissibility of expert testimony set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), but also the court refused to grant a hearing to determine the admissibility of the testimony under *Daubert.*

■ Missouri, however, has not adopted *Daubert.* In Missouri, section 490.065 RSMo 2000 governs the admissibility of expert testimony. *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 802 (Mo. banc 1997). Section 490.065 provides, "In any civil action, if scientific, technical or other special-ized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion . . . ." To be admissible, section 490.065.3 requires that the "facts or data in a particular case upon which an expert bases an opinion or inference . . . be of the type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and . . . be otherwise reasonably reliable." Whether expert opinion testimony satisfies the requirements of section 490.065 is a matter of trial court discretion. *Fierstein*, 24 S.W.3d at 226.

Under section 490.065, Cameron's expert witnesses were properly qualified to testify as experts on the subject of the origin of the fire because of their knowledge, skill, experience, training, and education. One expert, Jacobsen, was an investigator for the State of Missouri Fire Marshal's Office. In 1985, he was certified as a fire investigator by the State as well as by the National Fire Academy. He underwent additional fire investigation training every three years. Since 1986, he had investigated at least 120 fires per year. The other expert, Wysong, was certified by the State in 1991 as an investigator. In addition, from 1978 to 1985, he had been a firefighter; and from 1978 to 1985, he had been a fire investigator for the Jefferson County Sheriff's Department. Throughout his career, he had investigated more than 2,000 fires.

In addition, under section 490.065, the testimony of the expert witnesses constituted "scientific . . . knowledge [that would] assist the trier of fact" in understanding and determining whether the fire was intentionally set. Both witnesses investigated the scene of the fire and testified that the fire was intentionally set.

They pointed to indications that a combustible liquid was used and to a lack of signs of furniture or clothing in the house. They also eliminated accidental causes of the fire. Such testimony was relevant and rested on a reliable foundation. The testimony did not relate to questionable scientific reasoning or methodology. Rather, under section 490.065.3, the facts or data upon which the witnesses based their opinions were "of the type reasonably relied upon by experts in the field."

Further, Missouri cases have recognized that expert testimony may be admitted to establish the cause and origin of fires. *See, e.g., State v. Turnbough,* 388 S.W.2d 781, 785–786 (Mo.1965) (in arson prosecution, testimony of fire chief with 30 years' experience, involvement in about 1000 fires, and classroom training qualified to testify on origin of fire); *State v. Paglino,* 319 S.W.2d 613, 619–625 (Mo.1958) (in arson prosecution, detective captain of Secret Service Division of the St. Louis Police Department in charge of bombing and arson squad permitted to testify about origin of fire). The trial court did not err in admitting the testimony of the fire investigators. Bailey's second point is denied.

■ In his third point, Bailey charges error in the trial court's permitting Cameron to proffer evidence regarding arson, fraud, or concealment, because its pleadings did not sufficiently raise these defenses.

Rule 55.08 requires a party raising an affirmative defense to plead the defense. The purpose behind this rule is to give plaintiff notice of the defense. *McCain v. Washington,* 990 S.W.2d 685, 689 (Mo.App. E.D.1999). "A pleading that sets forth an affirmative defense or avoidance shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance." Rule 55.08. Bare legal conclusions fail to inform the plaintiff of the facts relied upon and, thus, fail to further the purpose protected by Rule 55.08. *McCain,* 990 S.W.2d at 689.

In its answer, Cameron asserted as its fourth affirmative defense (labeled "D") that Bailey "concealed or misrepresented material facts regarding the cause of the fire." As its sixth affirmative defense (labeled "F"), Cameron stated that Bailey was barred from recovery under the policy because the investigation indicated that the fire "was intentional in origin." Cameron's counterclaim for declaratory judgment also pled that Bailey misrepresented or concealed material facts as to the fire's origin and that the loss arose from the intentional acts of Bailey or of someone else at his direction. Cameron's answer and counterclaim were sufficient to raise the affirmative defenses and to provide Bailey with notice of its defenses.

The trial court did not err in permitting Cameron to offer evidence supporting its affirmative defenses. Bailey's third point is denied.

■ In his fourth point, Bailey challenges the trial court's denying his motion for new trial based on Heather Bailey's alleged perjury when she testified that her father, Clinton, set fire to Bailey's house at the direction of her grandfather, Charles. They claim that this false testimony was prompted by Heather's mother, Clinton's ex-wife, who harbored animosity toward Clinton and Bailey. At the post-trial hearing, Bailey offered the testimony of three witnesses, who were acquaintances of Heather and her mother, to establish that Heather lied because her mother threatened and coerced her to testify against Clinton and Bailey.

■ It is within the sound discretion of the trial court to determine whether perjury occurred and whether an improper verdict resulted therefrom.

*Hancock v. Shook,* 100 S.W.3d 786, 801 (Mo. banc 2003). The granting of a new trial on perjury grounds requires a showing that the witness willfully and deliberately testified falsely. *Id.* If testimony is determined to have been perjured, the decision regarding the materiality of the alleged false testimony is a question of law for the trial court. *Id.*

Here, although the trial court heard the testimony of the three witnesses at the post-trial hearing, it denied Bailey's motion for new trial. Thus, by implication, the trial court found Heather's testimony credible and the testimony of the other three witnesses not credible. The court also determined that there was other evidence supporting the arson theory besides Heather's testimony. There was evidence that arson would be financially beneficial to Bailey as well as physical evidence indicating that the fire was intentionally set. In addition, at trial, Bailey raised the question of Heather's credibility. The jury was apprised of the acrimony between certain members of the Bailey family and of the motivation for Heather to lie about Clinton's statement. She admitted that her parents had marital problems and that her mother said she wanted to put Clinton in jail. Bailey's counsel also argued in closing argument that Heather was coached about what to say at trial. It is the jury's duty to judge the credibility of witnesses and to weigh and value a witness's testimony. *Tomlin v. Guempel,* 54 S.W.3d 658, 660 (Mo.App. E.D.2001). As the trier of fact, the resolution of conflicts in evidence is within the jurors' exclusive province. *Wilkes v. Group Underwriters Mut.,* 715 S.W.2d 308, 310 (Mo.App. E.D.1986). Further, at the hearing on the motion for new trial, Heather reaffirmed that she heard her father admit to setting the fire and denied that her mother influenced her testimony. The trial court did not err in denying Bailey's motion for new trial based on perjury. Bailey's fourth point is denied.

In his fifth point, Bailey contends that the trial court erred in denying his motions for directed verdict and for judgment notwithstanding the verdict on his breach of contract claim (Count III), because he was entitled to judgment as a matter of law. In his sixth point, Bailey charges error in the trial court's submission of Cameron's affirmative defense instruction. In his seventh point, Bailey asserts that the trial court erred in dismissing Count II, the fraudulent misrepresentation claim. We have reviewed the remaining points on appeal and find that no error of law appears. No precedential value would be served by a written opinion on these points. They are denied pursuant to Rule 84.16(b).

The judgment of the trial court is affirmed.[2]

CLIFFORD H. AHRENS, P.J., LAWRENCE E. MOONEY, J.: Concur.

**2.** Plaintiffs' motion to stay this action is denied.