In the Matter of the Care and Treatment of Joseph H. WHITNELL, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 82283.

Missouri Court of Appeals, Eastern District, Division Three.

March 9, 2004.

Emmett D. Queener, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

Joseph Whitnell ("Whitnell") was convicted of sexual abuse in the first degree in 1992. On October 10, 2000, the State of Missouri ("state") filed a petition to civilly commit Whitnell as a sexually violent predator ("SVP") under section 632.486 RSMo 2000.[1] The matter was tried before a jury in the probate division of the Circuit Court of Washington County on August 28 and 29, 2002.

The principal witness for the state was Dr. Bruce Harry ("psychiatrist"), a psychiatrist, who testified as an expert witness.[2] Based on his review of a considerable body of records that were introduced into evidence, as well as interviews that he conducted with Whitnell, psychiatrist concluded that Whitnell has a mental abnormality, "paraphilia not otherwise specified." Psychiatrist further opined that Whitnell's paraphilia makes him more likely than not to engage in sexual predatory acts, and that his mental abnormality causes him serious difficulty in controlling his behavior. Throughout the course of his testimony, psychiatrist explained how the evidence that he reviewed, as well as his interviews with Whitnell, led to his conclusions as an expert.

On cross-examination, psychiatrist freely admitted that paraphilia, in and of itself, does not automatically mean a total lack of control. He also admitted that trying to discern whether a person has "serious difficulty" in controlling his behavior or whether a person chooses not to control himself is very difficult.

The jury returned a verdict that found Whitnell to be a sexually violent predator. On August 29, 2002, the probate division entered a judgment and commitment order directing that Whitnell be placed in the custody of the Missouri Department of Mental Health ("DMH") in a secure facility for care, control, and treatment until he is safe to be at large.

Whitnell now appeals from that judgment.

In his first point on appeal, Whitnell contends that the probate division erred by abusing its discretion in permitting psychiatrist to testify concerning the element of "serious difficulty controlling behavior" in that he was not qualified to express an opinion on that issue because

---

1. Unless noted otherwise, all further statutory citations are to RSMo 2000.

2. Whitnell did not challenge psychiatrist's standing as an expert witness at trial. Psychiatrist testified that he is board certified in general psychiatry and in forensic psychiatry, and that he had testified in court concerning the mental status of persons approximately one hundred times. He also stated that he had previously evaluated five other persons to determine whether or not they were SVPs, and of those five persons, he had determined that at least one was not a SVP.

"he did not distinguish between an inability to control behavior and an ability to control behavior but a conscious choice not to, thereby misstating the law and misleading jurors[,]" and depriving Whitnell of his due process rights under the U.S. Constitution and the Missouri Constitution.

█ Under section 632.480(5) a SVP is [A]ny person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who:

(a) Has pled guilty or been found guilty or been found not guilty by reason of mental disease or defect pursuant to section 552.030, RSMo, of a sexually violent offense[.]

A mental abnormality is defined as

[A] congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.

Section 632.480(2). Under the U.S. Supreme Court rulings in *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) and in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the sexual predator statutes of Kansas and Missouri, which are identical for all relevant purposes, are constitutional so long as the "mental abnormality" causes the person "serious difficulty in controlling his behavior." *Thomas v. State*, 74 S.W.3d 789, 790–91 (Mo. banc 2002).

█ The standard for the admission of expert testimony in civil cases is set forth by section 490.065.[3] *State Board of*

*Registration for the Healing Arts v. Edward W. McDonagh*, 123 S.W.3d 146, 153 (Mo. banc 2003); *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 801 (Mo. banc 1997). Testimony ought to be admitted if the expert witness possesses some qualification. *Krame v. Waller*, 849 S.W.2d 236, 240 (Mo.App.1993). Whether a witness's qualifications to state an opinion are sufficiently established largely rests in the discretion of the trial court and its ruling thereon will not be disturbed on appeal absent a clear showing of abuse. *Kell v. Kell*, 53 S.W.3d 203, 209 (Mo.App.2001). Likewise the admission or exclusion of expert opinion testimony is a matter within the discretion of the trial court, and this Court will not interfere with that discretion unless it plainly appears that it has been abused. *Id.*

█ In a civil case, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by skill, knowledge, experience, training, or education may testify thereto in the form of an opinion or otherwise. *Id.* In order for a witness to be qualified as an expert, it must be shown that by reason of specialized experience or education the witness possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of reaching correct conclusions. *Id.* If the witness has some qualifications, the testimony may be permitted. *Id.* The extent of an expert's training or experience goes to the weight of his testimony and does not render the testimony incompetent. *Id.*

---

**3.** Section 490.065(3) states:
The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and

must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

"Any weakness in the factual underpinnings of the expert's opinion or in the expert's knowledge goes to the weight that testimony should be given and not its admissibility.... In general, the expert's opinion will be admissible, unless the expert's information is so slight as to render the opinion fundamentally unsupported." *Alcorn v. Union Pacific Railroad Company,* 50 S.W.3d 226, 246 (Mo.2001) (citations omitted). The admission of expert testimony is within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of discretion. *Grab ex rel. Grab v. Dillon,* 103 S.W.3d 228, 238 (Mo.App.2003). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of judicial consideration. *Whitworth v. Jones,* 41 S.W.3d 625, 627 (Mo.App. 2001).

Psychiatrist, who is board certified in general psychiatry and forensic psychiatry, testified that to a reasonable degree of scientific certainty, Whitnell's mental abnormality, paraphilia, predisposes him to commit sexually violent offenses to the point that he has serious difficulty in controlling his behavior. Psychiatrist stated the facts that he considered in reaching this conclusion and indicated that these facts were of a type reasonably relied on by psychiatric experts in forming opinions concerning this issue. He discussed his review of Whitnell's history, beginning with his exposing himself to children and young adults, leading to "grooming and recruiting" efforts aimed at young girls, and eventually to the fondling of a ten-year old girl, which resulted in his 1992 conviction. Psychiatrist noted that some of these behaviors took place while Whitnell was on parole, indicating that "he can't stop it." He observed that Whitnell continued what appeared to be recruitment efforts directed toward children even while incarcerated, which "indicates either an incredible lack of common sense or that he just can't stop it[.]" Psychiatrist concluded "[t]hat he can't stop it, you know. I think he would if he could. He can't." Discussing Whitnell's repeated conduct violations while incarcerated, psychiatrist stated that such repeated violations, even after punishment, is an indication that he cannot stop his behavior. Psychiatrist also discussed other incidents that suggested to him that Whitnell would likely reoffend if released. He evaluated Whitnell's failure to complete the Missouri Sex Offender Program ("MoSOP"), and refusal of Mo-SOP services, noting that this resulted in his sentence being extended to the maximum date. Psychiatrist found this significant regarding his ability to control his behavior because it showed that the threat of additional punishment was not a deterrence. Psychiatrist concluded: "He can't stop."

On cross-examination, psychiatrist admitted that his conclusions regarding Whitnell were his expert opinions, and that another expert might have a different opinion. He also stated that the term "serious difficulty" was not normally used as a medical term, but rather as a legal one. Psychiatrist agreed with Whitnell that the difference between a serious difficulty in controlling one's behavior and choosing not to control one's behavior is difficult to discern, and that there was no national standard on this issue. Psychiatrist also said that he would rather not make this distinction if he did not need to do so, but despite this reluctance, he could do so in this case. He stated that he was offering his best opinion regarding Whitnell's ability to control himself. Psychiatrist stated that paraphilia, in and of itself, did not mean an automatic loss of control. He further stated that by itself, the fact

that a person commits repeated sexual offenses does not automatically mean a loss of control. However, he concluded Whitnell has serious difficulty in controlling his behavior, and that beyond a reasonable doubt, it is more likely than not that Whitnell would reoffend.

Psychiatrist possessed at least some qualifications to testify on this issue, and has testified in court regarding the mental state of various persons approximately one hundred times prior to this case and previously has evaluated five persons to determine whether or not they were SVPs. The trial court did not abuse its discretion in admitting psychiatrist's expert testimony. Point denied.

██ In his second point on appeal, Whitnell argues that the probate division erred because the judgment is not supported by substantial evidence and is against the weight of the evidence in that it failed to show that he has a mental abnormality that causes him to have serious difficulty in controlling his behavior rather than showing that he might have merely chosen not to control his behavior.

██ The evidentiary standard for the commitment of SVPs is the same as that used in criminal cases. *Amonette v. State,* 98 S.W.3d 593, 600 (Mo.App.2003). Where there is a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, accepting as true all evidence favorable to the state, including all favorable inferences drawn from the evidence and disregarding all contrary evidence and inferences. *State v. Clay,* 975 S.W.2d 121, 139 (Mo. banc 1998) (quoting *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989)), *cert. denied,* 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999); *Amonette,* 98 S.W.3d at 600. "We must determine whether the evidence presented to the jury was sufficient for twelve reasonable jurors to have

believed beyond a reasonable doubt that appellant is a sexually violent predator." *Amonette,* 98 S.W.3d at 600.

At trial, psychiatrist testified that in his opinion, to a reasonable degree of scientific certainty, that Whitnell's mental abnormality, paraphilia not otherwise specified, makes him more likely than not to engage in sexual predatory acts in the future if not confined in a secure facility. Psychiatrist also testified that Whitnell's mental abnormality causes him to have serious difficulty in controlling his behavior. As detailed in our analysis of the first point on appeal, psychiatrist stated the facts that he considered in reaching his conclusions and indicated that these facts were of a type reasonably relied on by psychiatric experts in forming opinions concerning this issue. Whitnell basically argues that facts upon which psychiatrist relies support a different inference, namely that Whitnell chose not to control his behavior rather than suffering from a serious difficulty in controlling his behavior and that some evidence suggested that he could control his behavior. Whitnell also states that psychiatrist's testimony is only his personal opinion of what he might do, not that he would definitely reoffend.

██ As noted earlier, we view the evidence and inferences in the light most favorable to the verdict and disregard evidence and inferences to the contrary. *State v. Clay,* 975 S.W.2d at 139; *Amonette,* 98 S.W.3d at 600. Accordingly, we will not draw a contrary inference from the evidence. As for psychiatrist's opinion, which he frankly admitted was not an absolute certainty, we note what the U.S. Supreme Court has said about such evidence. In *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), *rehearing denied,* the Supreme Court observed:

The suggestion that no psychiatrist's testimony may be presented with respect to a defendant's future dangerousness is somewhat like asking us to disinvent the wheel. In the first place, it is contrary to our cases. If the likelihood of a defendant committing further crimes is a constitutionally acceptable criterion for imposing the death penalty, which it is, . . ., and if it is not impossible for even a lay person sensibly to arrive at that conclusion, it makes little sense, if any, to submit that psychiatrists, out of the entire universe of persons who might have an opinion on the issue, would know so little about the subject that they should not be permitted to testify.

*Id.* at 896–97, 103 S.Ct. 3383 (citations omitted). The law does not require absolute certainty of an opinion about future behavior. Missouri requires only that an expert's opinion be reasonably certain. *Turnbo by Capra v. City of St. Charles,* 932 S.W.2d 851, 855 (Mo.App.1996). *See also Mitchem v. Gabbert,* 31 S.W.3d 538, 543 (Mo.App.2000). The jury was free to weigh psychiatrist's testimony and the qualifications that he applied to his testimony under cross-examination. There was sufficient competent and substantial evidence to submit the case to the jury. Point denied.

■ In his third point on appeal, Whitnell asserts that the trial court abused its discretion in permitting psychiatrist to testify that he relied, in part, on allegations that Whitnell sexually abused his daughter because such evidence was hearsay, injected a collateral matter into the case, and was more prejudicial than probative, thereby depriving him of his due process rights under the U.S. Constitution and Missouri Constitution.

■ In recognition of the generally accepted principle that an expert acquires his knowledge and expertise from a number of sources, some of which may include inadmissible hearsay, an expert can rely on hearsay information in forming an opinion. *Dillon,* 103 S.W.3d at 239. An expert can rely on such information provided that those sources are not offered as independent substantive evidence, but rather serve only as a background for his opinion. *Id.* (quoting *State ex rel. Mo. Highway & Transportation Comm'n v. Delmar Gardens of Chesterfield, Inc.,* 872 S.W.2d 178, 182 (Mo.App.1994)). Section 490.065.3 permits an expert to consider facts not in evidence in forming an opinion or inference, but a two-step approach must be used to determine the admissibility of that expert opinion. *McDonagh,* 123 S.W.3d at 156–57; *Bruflat v. Mister Guy, Inc.,* 933 S.W.2d 829, 833 (Mo.App.1996), *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003). First, the facts or evidence must be of a type reasonably relied on by experts in the field in forming opinions or inferences on the subject. *Id.* Second, the trial court must independently decide if the facts and data relied on by the expert meet a minimum standard of reliability, i.e., are otherwise reasonably reliable. *Id.* The trial court has discretion in deferring to an expert's assessment of what data is reasonably reliable. *Scott v. SSM Healthcare St. Louis,* 70 S.W.3d 560, 572 (Mo.App. 2002). Questions regarding the sources and bases of an expert's opinion affect the weight rather than the admissibility of the opinion. *Sanders v. Hartville Mill. Co.,* 14 S.W.3d 188, 208 (Mo.App.2000). The exclusion or admission of expert testimony is within the sound discretion of the trial court, and this Court will not disturb this ruling absent a clear abuse of discretion. *Dillon,* 103 S.W.3d at 238. It is a clear abuse of discretion when the court's ruling is against the logic of the circumstances or

when it is arbitrary and unreasonable. *Whitworth,* 41 S.W.3d at 627. However, this Court will affirm if the trial court's admission of evidence can be sustained on any ground. *Bailey v. Cameron Mutual Insurance Co.,* 122 S.W.3d 599, 602 (Mo. App.2003).

Psychiatrist testified that he partially formed his opinion that Whitnell suffers from paraphilia based on allegations that Whitnell's daughter made in November 1987 that he had sexually abused her, which included drawings that she made about the alleged abuse. Psychiatrist stated that according to the report that he examined, the physical examination of the child neither confirmed nor denied these allegations. He also stated that he understood that Whitnell was not charged or convicted of any crime relating to this alleged sexual abuse. He further said that this knowledge that Whitnell had not been charged or convicted affected how he considered those allegations in making his evaluation of Whitnell. Psychiatrist also testified that he reviewed a March 18, 1992 letter from a social worker to the Prosecuting Attorney of St. Francois County, regarding Whitnell's case at that time, stating that Whitnell was "substantiated" for sexual abuse of his daughter. He stated that this letter assisted him in giving consideration to the alleged incident involving Whitnell's daughter because it explained something in the report that he read on that incident.

Psychiatrist testified that it was generally accepted in the field of forensic psychiatry to use instances such as the alleged sexual abuse involving Whitnell's daughter, whether or not it resulted in a criminal charge or conviction, as a factor in evaluating whether or not a person suffers from a mental abnormality. He also stated that the March 18, 1992 letter from the social worker to the prosecutor was of a type

that forensic psychiatrists use in determining if a person is a sexually violent predator. This satisfies the first requirement of section 490.065.3. The next issue is whether the allegations by Whitnell's daughter are "otherwise reasonably reliable."

As the Missouri Supreme Court has recently observed, few cases have interpreted section 490.065. *McDonagh,* 123 S.W.3d at 155. The cases suggest that the language of section 490.065.3, "otherwise reasonably reliable," simply imposes on the trial court the responsibility of independently deciding the reliability of facts and data that the expert witness relies on in forming his or her opinion or inference, and somewhat limits the deference that the trial court gives to the expert on the reliability of facts and data. See *McDonagh,* 123 S.W.3d at 156–57; *Bailey,* 122 S.W.3d at 603; *Bruflat,* 933 S.W.2d at 833; *Glidewell v. S.C. Management, Inc.,* 923 S.W.2d 940, 951 (Mo.App.1996).

Whitnell contends that his daughter's allegations are not "otherwise reasonably reliable" because they are "mere allegations" that were not confirmed by the physical examination, and that just because psychiatrists are willing to rely on such assertions does not make the assertions admissible in a court of law. We disagree.

As *Peterson v. National Carriers, Inc.,* 972 S.W.2d 349 (Mo.App.1998), a case cited by Whitnell, says, an expert can rely on hearsay evidence to support an opinion if that evidence is of a type reasonably relied on by other experts in the field, "and such evidence need not be independently admissible." *Id.* at 355 (quoting *State v. Rowe,* 838 S.W.2d 103, 110 (Mo.App.1992)). Therefore, assuming Whitnell's contention that his daughter's allegations of sexual abuse at his hands are inadmissible is correct, psychiatrist could still rely on those

allegations according to *Peterson*, provided that those allegations were "otherwise reasonably reliable." Section 490.065.3.[4]

 Whitnell also argues that the allegations do not satisfy the reliability requirement of section 490.065.3 because his daughter was under ten years old when she made them, and "therefore presumptively incompetent to testify at trial." Whitnell apparently relies on section 491.060(2), which provides that a "child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which the child is examined, or of relating them truly" is incompetent to testify. This statute creates a rebuttable presumption that a child under ten years of age is incompetent to testify. *State v. Williams*, 729 S.W.2d 197, 199 (Mo. banc 1987). The trial court apparently relied on a specific exception contained in the statute, which provides that "a child under the age of ten who is alleged to be a victim of an offense pursuant to chapter 565, 566 or 568, RSMo, shall be considered a competent witness and shall be allowed to testify without qualification in any judicial proceeding involving such offense. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony." Section 491.060(2). Whitnell's daughter did not testify at the time of the allegations, so there was no need to have a judicial evaluation of the reliability of those allegations at that time. However when construed with section 490.065(3), section 491.060(2) does not support Whitnell's claim that his daughter's allegations were not otherwise reasonably reliable.

Section 490.065(3) addresses this situation because it requires first that an expert evaluate evidence that might otherwise be inadmissible or provided by an incompetent source and find that it is reasonably reliable, and second that the trial court make its own determination that the foundational facts are at least minimally reliable. *McDonagh*, 123 S.W.3d at 156, 157; *Bruflat*, 933 S.W.2d at 833. Whitnell concedes that this type of evidence is reasonably relied on by experts in psychiatrist's field. Psychiatrist examined and evaluated the daughter's allegations, the report on the allegation, and the March 18, 1992 letter from the social worker, and found them reasonably reliable enough to be of assistance in forming his opinion. That experts in psychiatrist's field reasonably rely on such data, and psychiatrist's own evaluation and reliance on it is sufficient to rebut any unreliability implied from section 491.060 concerning statements from Whitnell's daughter made when she was less than ten years old.

 The trial court still has an independent duty to decide whether the foundational facts meet a minimum standard of reliability as a condition of admitting the expert's opinion, i.e., are otherwise reasonably reliable. *McDonagh*, 123 S.W.3d at 156, 157; *Bruflat*, 933 S.W.2d at 833. Psychiatrist testified about the contents of the report on the alleged abuse. The letter of March 18, 1992 from the social worker indicating that the abuse allegations were substantiated was entered into evidence. The trial court had the opportunity to evaluate these facts. This is sufficient to support the trial court's determination that the daughter's allegations were otherwise reasonably reliable.

 Whitnell contends that the social worker's letter is itself not otherwise reasonably reliable. Psychiatrist relied on this letter in forming his opinion, noting that it clarified the report on the abuse allegation. The letter was entered into

---

4. *See also Dillon,* 103 S.W.3d at 239.

evidence as an exhibit for the State, and the trial court had the opportunity to examine its contents. Whitnell did not offer any testimony or other evidence to indicate that a letter sent by a social worker, apparently in the course of her work, was not reasonably reliable. The report which this letter apparently corrected was not entered into evidence by either the State or Whitnell. The record before this Court contains neither the letter at issue nor the report which it purportedly corrected. Rule 81.12(a) requires that the record on appeal "shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented...." It is the appellant's duty to prepare a legal file and order a transcript such that the record holds all of the evidence needed for the determination of the questions presented to the appellate court. *Boyer v. City of Potosi*, 77 S.W.3d 62, 67 (Mo.App.2002). In his cross-examination of the expert, Whitnell did not question psychiatrist at all concerning the allegations of his daughter in 1987 or the letter or March 18, 1992.

We also note that, when considering whether to allow psychiatrist to rely on daughter's allegations in expressing his opinion, the trial court was entitled to take into account Whitnell's assertion at trial that the issue of alleged prior offenses was more appropriately a matter for testimony by an expert witness rather than daughter. Whitnell filed a motion to exclude his daughter and a number of other people as witnesses because:

> [N]one of them is qualified to testify about mental abnormalities or diagnosis of the same, nor can any of them provide the jury with any educated risk assessment regarding [Whitnell]. Their

testimony, which promises to be more emotional than informative, is simply cumulative and far more prejudicial than probative, as the question here is not "what happened?" factually in the past, but what those past events mean for the future of [Whitnell]. None of these witnesses is qualified to testify as to these issues. The facts and situations of the alleged offenses regarding these persons, to the extent directly pertinent to the questions before the jury, can more properly be made the subject of testimony by an expert witness such as [psychiatrist], whose testimony is bound to be detached and factual rather than emotional and unduly prejudicial.

The trial court sustained this motion in part, and Whitnell's daughter did not testify. Obviously the trial court was aware of this when considering the reliability of daughter's allegations.

 Whitnell also contends that allowing the psychiatrist to testify that he relied on daughter's allegations in forming his expert opinion introduced a collateral matter into the case and was more prejudicial than probative. The allegations of Whitnell's daughter, which psychiatrist relied on in part in forming his opinion, are relevant. As the Kansas Supreme Court stated in the case of *In re Hay*, 263 Kan. 822, 953 P.2d 666, 678 (1998), "[t]he critical issues in a sexual predator case make the evidence of prior conduct, charged or uncharged, material evidence in the case."[5] Of course the allegations are prejudicial because the psychiatrist relied on them in part in forming his negative opinion of Whitnell. This is a natural consequence of the information having probative value. However, the prejudicial impact of the psychiatrist's reliance on the allegations

---

**5.** The Missouri Supreme Court has stated that the sexual predator statutes of Missouri and Kansas are the same for "all relevant pur-

poses[.]" *Thomas v. State,* 74 S.W.3d 789, 790 (Mo. banc 2002).

did not outweigh its probative value. If we were to answer otherwise, experts could never rely on such evidence in forming opinions. We note further that the prejudicial impact of the daughter's allegations was minimized. Psychiatrist testified that he knew that Whitnell had not been charged, much less convicted, for any offense relating to the allegations, and that this knowledge affected his consideration of the allegations in forming an opinion. Whitnell's counsel also made it abundantly clear to the jury in his closing argument that the daughter's allegations in 1987 did not result in him being charged for any offense.

Moreover, as noted above, Whitnell filed a motion to exclude his daughter as a witness because of his concern that it would inject emotion rather than information into the hearing, and would be much more prejudicial than probative. In that motion he specifically suggested that testimony by psychiatrist concerning allegations of abuse would be more proper as it "is bound to be detached and factual rather than emotional and unduly prejudicial." The trial court sustained this motion, and psychiatrist testified on this matter instead of Whitnell's daughter. When balancing the possible prejudice against the probative value of the evidence, the trial court was entitled to consider Whitnell's assertion that psychiatrist could testify to alleged abuse in a "detached and factual" manner rather than in an "emotional and unduly prejudicial" manner. As noted above, psychiatrist was careful to point out that the physical examination of Whitnell's daughter was neutral, neither indicating nor clearly refuting sexual abuse, that Whitnell was not convicted of sexual abuse of his daughter, and that he considered this in forming his opinion. The trial court did not abuse its discretion in admitting psychiatrist's testimony. Point denied.

In his fourth point on appeal, Whitnell argues that the probate division erred in denying his motion to dismiss the petition because section 632.495 failed to provide for a less restrictive alternative to secure confinement, thereby violating his right to equal protection under the U.S. Constitution and Missouri Constitution, in that sexually violent predators who are involuntarily committed to the DMH are treated differently from similarly situated persons.

The Missouri Supreme Court has recently addressed this issue in two cases decided on the same day, *In the Matter of the Care and Treatment of Michael G. Norton*, 123 S.W.3d 170 (Mo. banc 2003) and *In re Care and Treatment of Spencer*, 123 S.W.3d 166 (Mo. banc 2003). In those cases the Missouri Supreme Court found that there was no violation of equal protection rights. The Court stated that it

> finds secure confinement of persons adjudicated to be SVPs, as provided in sections 632.480 to 632.513, is narrowly tailored to serve a compelling state interest. The State has a compelling interest in protecting the public from crime. This interest justifies the differential treatment of those persons adjudicated as sexually violent predators who, as determined by the legislature, such mental abnormality makes them distinctively dangerous because of the substantial probability that they will commit future crimes of sexual violence if not confined in a secure facility. . . .

> Given the additional procedural safeguards afforded by Missouri's civil confinement statutes, and the multiple opportunities for court review and dismissal from secure confinement, this Court finds that Missouri's statutory scheme is narrowly tailored to promote the compelling interest of protecting

the public from this small percentage of offenders.

*Norton,* 123 S.W.3d at 174–75. These decisions by the Missouri Supreme Court are dispositive of Whitnell's fourth point on appeal. Point denied.

The judgment of the probate division is affirmed.

WILLIAM H. CRANDALL, JR., and LAWRENCE E. MOONEY, JJ., concurs.