In the Matter of the CARE AND TREATMENT OF Rodney KAPPRELIAN, a/k/a Rodney A. Kapprelian, a/k/a Robert McCloud, a/k/a Rodeau A. Kaprielian, a/k/a Rodney A. Kapprelian, a/k/a Rodney Kaprielian, a/k/a Rodney Cole, a/k/a Allen Kapprielian, Respondent–Appellant.

No. 26435.

Missouri Court of Appeals, Southern District, Division Two.

July 5, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 21, 2005.

Application for Transfer Denied Aug. 30, 2005.

Emmett D. Queener of Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Ryan Bertels, Asst. Atty. Gen. of Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

After a bench trial, Rodney Kapprelian ("Kapprelian") was found to be a sexually violent predator ("SVP") pursuant to the Sexually Violent Predators Civil Commitment Act ("SVPCCA"), §§ 632.480–.513.[1] Kapprelian appeals from the judgment ordering him committed to the custody of the Department of Mental Health ("DMH") for control, care and treatment until such time as his mental abnormality has so changed that he is safe to be at large. In Kapprelian's sole point relied on, he challenges the sufficiency of the evidence to support the trial court's factual finding that Kapprelian's mental abnormality makes him more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility. Kapprelian argues there is insufficient evidence to prove this fact beyond a reasonable doubt because: (1) it ignores Kapprelian's recent good behavior in confinement, which is a better predictor of future behavior than his past history of repeatedly molesting children while not confined; and (2) Dr. Jackson's opinion about Kapprelian's future behavior was essentially based on nothing more than clinical judgment, which causes the trial court's finding to

1. All references to statutes are to RSMo (2000).

rest on mere speculation. Finding these arguments to be without merit, we affirm.

## I. Standard of Review

In order to have Kapprelian committed to the custody of the DMH for treatment, the State had to prove beyond a reasonable doubt that: (1) Kapprelian has a congenital or acquired condition affecting his emotional or volitional capacity that predisposes him to commit sexually violent offenses to a degree that causes him serious difficulty in controlling his behavior; and (2) he is more likely than not to engage in predatory acts of sexual violence if not confined. § 632.480(2); § 632.480(5); § 632.495; *Thomas v. State*, 74 S.W.3d 789, 791–92 (Mo. banc 2002); *In re Coffel*, 117 S.W.3d 116, 121 (Mo.App.2003). Kapprelian only challenges the sufficiency of the evidence to establish the second element.

We assess the sufficiency of the evidence to support a judgment of commitment in a SVPCCA case by the same standard used in criminal cases. *See Smith v. State*, 148 S.W.3d 330, 335 (Mo. App.2004); *In re Care and Treatment of Collins*, 140 S.W.3d 121, 125–26 (Mo.App. 2004); *In re Care and Treatment of Pate*, 137 S.W.3d 492, 496 (Mo.App.2004). Review of a bench-tried criminal case is the same as for a jury-tried case. *State v. Garriott*, 151 S.W.3d 403, 410 (Mo.App. 2004); *State v. Daniels*, 18 S.W.3d 66, 67–68 (Mo.App.2000). Appellate review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense was established beyond a reasonable doubt. *State v. Mann*, 129 S.W.3d 462, 465 (Mo.App.2004); *State v. Thompson*, 112 S.W.3d 57, 62 (Mo. App.2003); *Daniels*, 18 S.W.3d at 68. It is not our function to reweigh the evidence. *State v. Winsor*, 110 S.W.3d 882, 885 (Mo.

App.2003). Instead, we only determine whether the judgment is supported by sufficient evidence. *Id.* "The credibility and weight of testimony are for the fact-finder to determine. The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002) (citation omitted).

When the sufficiency of the evidence is challenged, we view the evidence in the light most favorable to the trial court's judgment, "accepting as true all evidence favorable to the state, including all favorable inferences drawn from the evidence and disregarding all contrary evidence and inferences." *Whitnell v. State*, 129 S.W.3d 409, 415 (Mo.App.2004). In reviewing the evidence, however, "this Court will not give the State the benefit on any unreasonable, speculative, or forced inferences; nor will we supply any missing evidence." *In re Care and Treatment of Burgess*, 147 S.W.3d 822, 830 (Mo.App. 2004). We will not reverse a trial court's decision based on insufficiency of the evidence unless there is a complete absence of probative facts supporting the judge's conclusion. *See Smith*, 148 S.W.3d at 335. The following summary of the evidence has been prepared in accordance with these principles.

## II. Statement of Facts

Between August 1984 and June 1995, Kapprelian sexually abused 13 young boys in Washington, California, Florida and Missouri. This pattern of molestation began when Kapprelian was 29 years old and continued until he was approximately 40 years old. Several of Kapprelian's offenses against children were committed while he was on parole for prior convictions of sexually molesting children. In 1995, he was incarcerated in Missouri after

pleading guilty to statutory sodomy in the first degree for engaging in deviate sexual intercourse with a 13-year-old boy.

Just prior to Kapprelian's release from confinement on the sodomy conviction in April 2003, the State filed a petition alleging that Kapprelian was a SVP who needed to be committed to the DMH for control, care and treatment. The trial court entered an order appointing Dr. Steve Jackson, a licensed psychologist employed by the DMH, to conduct an evaluation of Kapprelian to determine whether he met the criteria for a SVP. Dr. Jackson had previously conducted over 20 such SVP evaluations. As a part of the evaluation process, Dr. Jackson interviewed Kapprelian and also reviewed approximately 2,000 pages of documentary information concerning him.[2]

A bench trial was held July 9, 2004. Dr. Jackson was the only witness who testified. His written evaluation of Kapprelian also was admitted in evidence. The facts set forth below are drawn from Dr. Jackson's trial testimony or his report.

Dr. Jackson opined to a reasonable degree of psychological certainty that Kapprelian suffers from the mental abnormality of pedophilia. This condition consists of "recurrent intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with children." Based on Kapprelian's pattern of offenses, he is attracted to male children. Pedophilia does not go away and constitutes a "lifelong and chronic problem" for persons afflicted by it. Kapprelian's mental abnormality of pedophilia predisposes him to commit sexually violent crimes because it causes him to have serious difficulty in controlling his behavior. There are two factors which tend to strongly support this conclusion. The first is Kapprelian's history of being a repeat sexual offender. This factor is significant because Kapprelian molested a large number of child victims over a long period of time, and incarceration did not deter him from sexually abusing more children. The second is Kapprelian's history of reoffending while on parole or under court supervision for a prior sexual offense involving a child. In Dr. Jackson's opinion, such past behavior is the best predictor of future behavior.

After Kapprelian was incarcerated in Missouri, his pedophilia did not respond to the treatment offered in prison. Although he completed the first phase of the Missouri Sex Offender Treatment Program ("MOSOP"), he was "kicked out" of the program before completing the second phase for failure to apply the concepts he had learned during the first phase. Kapprelian was found to be evasive, untruthful and manipulative by MOSOP staff, and they considered him to be at a "very, very high risk of reoffending." One MOSOP therapist concluded that Kapprelian had "no intention of surrendering to the change process which requires rigorous

2. This information included: (1) police and court records concerning Kapprelian's sexual offenses against children in Missouri, California and Florida; (2) records from Florida's Department of Children and Families and its Department of Health concerning several children who were sexually abused by Kapprelian; (3) records from Missouri's Division of Social Services concerning several children who were sexually abused by Kapprelian; (4) records from the Missouri Department of Corrections concerning Kapprelian's incarceration there from 1995–2003; (5) records of Kapprelian's participation in the Missouri Sex Offender Treatment Program; (6) an end-of-confinement assessment report on Kapprelian performed by Dr. Derrise Becker, a Missouri Department of Corrections psychologist; (7) records from Kapprelian's interim placement at the Missouri Sex Offender Treatment Center in Farmington, where he was sent after being released from prison; and (8) Kapprelian's scores on the Minnesota Sex Offender Screening Tool–Revised and the Static–99.

honest . . . self-examination." Kapprelian also did not understand what triggered him to sexually abuse children, and he had only a "vague ill-defined" plan to avoid relapses if released from confinement.

In addition to the mental abnormality of pedophilia, Dr. Jackson also diagnosed Kapprelian as suffering from sexual masochism. This condition is defined as "sexually arousing fantasies, urges or behaviors wherein acts that cause either humiliation or physical suffering of a victim are sexually exciting to an individual." Kapprelian admitted, and his records also confirmed, that he tried to get the children he sexually abused to harm themselves for Kapprelian's own sexual gratification.

Dr. Jackson testified that Kapprelian's mental abnormality of pedophilia, coupled with the additional diagnosis of sexual masochism, makes him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility. This conclusion was based upon two independent considerations: (1) the results of Kapprelian's score on the Static–99 assessment; and (2) a review of other relevant factors drawn from the relevant professional literature on the subject.

Dr. Jackson first explained his assessment of Kapprelian using the Static–99. This assessment tool is an actuarial instrument that is widely used and accepted in the field of psychology to make statistical predictions about the likelihood of a sex offender being reconvicted of another sexual offense within five, ten and fifteen year periods after being released from confinement. It measures 10 risk factors for reconviction. Kapprelian scored an 8 on the Static–99 assessment, which predicted his risk of reconviction as 33% within five years, 52% within ten years, and 57% within fifteen years. The Static–99 is generally accepted as a reliable instrument for predicting future sexually violent behaviors by professionals who evaluate sexually violent predators. It has been validated and cross-validated approximately 15 times, and it has been tested for inter-rater reliability approximately five times.[3]

Because a prudent evaluator would not base his or her SVP assessment solely upon the results of the Static–99, Dr. Jackson also considered other risk factors identified as significant by professional research on the subject. Dr. Jackson described the additional factors as "aggravators." He identified the following aggravators in his risk assessment of Kapprelian:

1. he suffers from the deviant sexual preference of pedophilia;

2. he has engaged in sexual masochism with children;

3. he has had a consistently high number of offenses against children over a long period of time;

4. he suffers from multiple deviant sexual preferences in the form of pedophilia and sexual masochism;[4]

5. he suffers from an intimacy defect which causes him to identify roman-

---

3. Validation means the instrument is actually able to measure what it purports to measure in a test population. Cross-validation means the instrument measures what it is supposed to measure when applied to a different population of test subjects. Inter-rater reliability means different psychologists using the instrument would arrive at the same score when evaluating the same test population.

4. This factor is significant because research indicates that a person who suffers from more than one deviant sexual interest is at a greater risk of reoffending. In other words, Kapprelian is more at risk to reoffend because he suffers from pedophilia and sexual masochism than he would be if he suffered from pedophilia alone.

tically with children more than he does with adults;

6. while on parole for one sex offense against a child, Kapprelian absconded and molested another child;

7. Kapprelian suffers from a lack of self-regulation, as demonstrated by his past history of extensive drug and alcohol abuse and homosexual prostitution as a young man; and

8. he did not complete MOSOP while in prison.

Dr. Jackson concluded that each aggravator increased Kapprelian's risk of reoffending.

At the conclusion of Dr. Jackson's direct examination, he testified that Kapprelian's mental abnormality makes him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility. Kapprelian's behavior is predatory because he places himself in a position to meet children for the primary purpose of victimizing them.

The trial court found the evidence to be "one-sided and overwhelming" and made a specific factual finding that "[Kapprelian's] mental abnormality makes him more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility." This appeal followed.

## III. Discussion

■ In attacking the sufficiency of the evidence, Kapprelian first takes issue with Dr. Jackson's testimony that the best predictor of Kapprelian's future behavior is his past behavior of repeatedly molesting children over a long period of time when not confined. Kapprelian argues that Dr. Jackson's opinion ignores Kapprelian's recent good behavior while confined in Missouri. As evidentiary support for Kapprelian's argument, he points out that: (1) he had only two minor conduct violations in

prison, and neither involved sexual misconduct; (2) otherwise, he abided by prison rules; (3) he did not seek to obtain child pornography while in prison; and (4) he has been cooperative during his pretrial detention at Farmington and has engaged in no inappropriate sexual behavior there. Citing *State v. Huss*, 666 N.W.2d 152 (Iowa 2003) (*Huss I*), Kapprelian argues that evidence of recent overt acts, attempts or threats is necessary to support a prediction of future danger. We find this argument unpersuasive for two reasons.

First, Kapprelian's recent behavior in confinement was considered by Dr. Jackson, but he did not find it to be significant in assessing Kapprelian's risk of reoffending. Dr. Jackson testified that the above-referenced facts only demonstrated Kapprelian's ability to maintain control of himself in prison. The doctor discounted the importance of such behavior because it is common for pedophiles to be fairly well-behaved in prison and have few conduct violations when they are away from children. Dr. Jackson opined that Kapprelian's ability to control himself in the rigidly-controlled environments of prison and pretrial detention at Farmington presented a significantly different issue than his ability to control himself "around children or . . . in the community at large." It was up to the trial court to weigh Dr. Jackson's testimony on that subject and decide what value to place upon it. *See Whitnell v. State*, 129 S.W.3d 409, 416 (Mo.App.2004).

Second, we believe Kapprelian's reliance on *Huss I* is misplaced. In that case, Huss murdered his girlfriend, but he was found not guilty by reason of insanity after a second bench trial. *Huss I*, 666 N.W.2d at 155. The second trial did not occur until after Huss had been confined in a mental institution for 17 years, during which time he had been a model prisoner. To prevent Huss' release after the second

trial concluded, the trial court conducted a civil commitment hearing pursuant to Iowa Rule of Criminal Procedure 2.22(8). *Id.* at 155. The court had to decide whether Huss was still mentally ill and whether he was a danger to himself or others. *Id.* at 157–58 n. 1. With regard to the second issue, two doctors testified that Huss was a danger to himself or others based on his past behavior, which both agreed was the best predictor of Huss' future behavior. *Id.* at 156–57. The trial court ordered Huss' continued commitment after finding that he was mentally ill and was dangerous to himself and others. *Id.* at 159–60. On appeal, Huss challenged the sufficiency of the evidence to support these findings. The Iowa Supreme Court concluded the proof of present dangerousness was insufficient because there was no evidence of a recent overt act, attempt or threat by Huss against himself or others. *Id.* at 161.

■ We find *Huss I* inapposite because proof of a recent overt act was not required in order to find that Kapprelian was a SVP. In Missouri, pleading and proof of the commission of a recent overt act is not required unless the person alleged to be a SVP is not in the custody of an agency with jurisdiction at the time the petition is filed and has not been in the custody of such an agency within the preceding 10 years. *See* § 632.484.1(1–2). At the time the petition in the case at bar was filed, Kapprelian was incarcerated at the Farmington Correctional Center. Therefore, he was in the physical custody of the Missouri Department of Corrections, which is an agency with jurisdiction. § 632.480(1). That being so, proof of a recent overt act was not necessary.

The same is true under Iowa's SVP law. *See In re Detention of Huss*, 688 N.W.2d 58, 64 (Iowa 2004) (*Huss II*). After Huss' civil commitment order was reversed and remanded in *Huss I*, he was found to be a

SVP in a different proceeding. On appeal, Huss relied on *Huss I* and argued he could not be found to be a SVP absent proof of a recent overt act. The Iowa Supreme Court held that its SVP law contains no such requirement with respect to a person presently confined for a sexually violent offense:

> Huss urges that the basis for holding him in future confinement has been resolved against the claims of the State by our decision in [*Huss I*]. As we have noted, the determination in that case was premised on the lack of a recent overt act, which was deemed to be necessary for a rule 2.22(8) commitment. As discussed in a subsequent division of this opinion, the existence of a recent overt act is not an essential requirement with respect to a petition for commitment as a sexually violent predator filed under Iowa Code section 229A.4(1). *In re Detention of Gonzales*, 658 N.W.2d 102, 104–05 (Iowa 2003). Consequently, Huss's preclusion issue must fail.

*Huss II*, 688 N.W.2d at 64. The explanation for that conclusion was set out in a later part of the opinion:

> The attorney general's petition against Huss was filed pursuant to Iowa Code section 229.A.4(1), which is a statute dealing with persons who are "presently confined." In *Gonzales*, 658 N.W.2d at 104–05, we held that, in order for a petition to be filed under the "presently confined" alternative, the current confinement must be for a sexually violent offense. *Gonzales*, 658 N.W.2d at 104–05. That is because under section 229A.4(1) the offense leading to the current confinement may be a substitute for the requirement of showing a recent overt act if it was a sexually violent offense. *Id.*

*Huss II*, 688 N.W.2d at 65. Here, Kapprelian was incarcerated for a sexually vio-

lent offense when the State's petition was filed, so proof of a recent overt act was not required. Kapprelian's first argument is without merit.

■ In Kapprelian's second argument, he contends Dr. Jackson's testimony is too speculative to provide an adequate evidentiary basis for the trial court's finding that Kapprelian is more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility. Kapprelian's complaint is that Dr. Jackson's opinion about Kapprelian's future behavior amounts to nothing more than clinical judgment, and "the use of clinical judgment to assess the risk of reoffense has been shown to be no more reliable than flipping a coin...." *In re Coffel,* 117 S.W.3d 116, 129 (Mo.App.2003).

Kapprelian's argument fails because it is based on an unsound premise: that Dr. Jackson's opinion was based solely on his clinical judgment. That is simply not the case. Dr. Jackson's assessment of Kapprelian's risk of reoffending was based upon the factors listed in the Static–99 and other empirical risk factors drawn from professional research literature on the subject. The Static–99 is an actuarial instrument which is accepted by professionals in the field as a reliable and valid instrument by which to assess the risk of reconviction of a sexually violent offense. Dr. Jackson scored Kapprelian based on the 10 risk factors utilized by the Static–99. In addition, Dr. Jackson testified that a prudent evaluator would not limit his or her assessment to just those static factors because other dynamic factors affecting the risk of reoffending have been identified by the relevant professional research on the subject. This research supported the use of each of the additional dynamic factors that Dr. Jackson utilized in evaluating Kapprelian. In sum, Dr. Jackson's opinion was based on scientifically-derived empirical factors, rather than naked clinical judgment. That distinguishes the case at bar from *Coffel,* which involved a female individual for whom there was "no data or research as to the accuracy of clinical judgment as a means of risk assessment[.]" *Coffel,* 117 S.W.3d at 123. Therefore, Dr. Jackson's testimony provided sufficient evidentiary support to sustain the trial court's finding. *See Whitnell v. State,* 129 S.W.3d 409, 415–16 (Mo.App. 2004) (a single psychiatrist's expert testimony provided sufficient competent and substantial evidence to submit the case to the jury in a SVP case). Kapprelian's second argument has no merit.

## IV. Decision

It was the trial court's responsibility to weigh the facts and reach a conclusion about the likelihood that Kapprelian will continue to engage in predatory acts of sexual violence because of his pedophilia and sexual masochism. Neither of Kapprelian's challenges to Dr. Jackson's testimony, which formed the basis for the trial court's findings, have any merit. Accordingly, we hold that the judgment is supported by substantial evidence. *See In re Care and Treatment of Francis,* 159 S.W.3d 873, 880 (Mo.App.2005). Kapprelian's point on appeal is denied, and the judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.