

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

|  |  |
|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF: W.N., A/K/A W.H.N. | ) No. ED112489 <br> ) <br> ) Appeal from the Circuit Court of <br> ) the City of St. Louis <br> ) <br> ) Honorable Madeline O. Connolly <br> ) <br> ) <br> ) Filed: April 15, 2025 |

### Introduction

W.N. appeals the circuit court's judgment entered upon a jury verdict finding he is a sexually violent predator ("SVP") as defined by Missouri's Sexually Violent Predator Act ("SVPA") § 632.480–632.513.[1] In his sole point on appeal, W.N. argues the exclusion of his psychologist expert's testimony ("Expert 2") regarding alleged "inconsistencies" between a rape victim's testimony and the physical evidence the police recovered regarding a 1996 sexual assault violated his due process rights. He contends Expert 2 relied upon this information in coming to her conclusion and could not persuasively explain her position without it.

This Court holds the circuit court did not abuse its discretion in excluding this testimony because Expert 2 admitted she lacked the qualifications to testify as a medical expert. Point I is denied. The circuit court's judgment is affirmed.

---

[1] All references are to RSMo Cum. Supp. 2018.

**Factual and Procedural Background**

In 1996, W.N. babysat a friend's 13-year-old child, who accused him of sexual assault. The child alleged she sustained abdominal pain, pelvic pain, and bleeding. She underwent a sexual assault forensic examination, but the exam showed no signs of forceful penetration. The child's mother recovered the bedsheets on which the assault occurred, but the police did not find any blood. W.N. pled guilty to one count of statutory rape and two counts of statutory sodomy.

In May 2003, W.N.'s cousin accused him of raping her. W.N. originally told police he did not commit the crime, but when they revealed his DNA was found, he changed his story and claimed they had consensual sex. W.N was never charged for this incident. In 2007, he entered the Saint Louis University Pius XII Memorial Library. He walked up to a young woman, who ignored him. W.N. then unzipped his pants and masturbated in front of her. When she ran to alert security, W.N. stole her laptop. He was convicted of sexual misconduct.

In 2013, W.N. was in the office of a young female counselor, sitting directly across from her with a book over his lap. He was explaining his inability to control his sexual urges and his concern about re-offending. While W.N. was talking, the counselor noticed shuffling under the book and realized he was masturbating. When she told him to leave her office, she saw the head of his penis above the waistband of his pants. The counselor concluded W.N. derived erotic pleasure from discussing his inability to control his sexual urges. W.N. was convicted of sexual misconduct for this act. In May 2017, W.N. was arrested and charged with statutory rape. The victim alleged she awoke one morning to W.N. penetrating her from the rear. A jury found W.N. not guilty on this charge. In November 2017, W.N. was arrested on second-degree kidnapping, first-degree rape or attempted rape, and first-degree sodomy or attempted sodomy charges. The victim alleged she was selling shoes outside a gas station when W.N. asked her if she wanted to

ride with him to his house so he could get money. Once they arrived, W.N. allegedly held her against her will, removed her pants, and digitally penetrated her vagina. Then, he vaginally and anally raped her. While W.N. denied any sexual assault occurred, he acknowledged the victim began crying 10 minutes before he ejaculated but claimed she was crying because she wanted to see her children. W.N. was not charged because the victim was unavailable.

In addition to these sexual abuse convictions, charges, and arrests, W.N. amassed more than a dozen Missouri Department of Corrections conduct violations for exposing himself and/or masturbating in front of others.

The State filed a petition in June 2018 under § 632.486 to civilly commit W.N. to the Missouri Department of Mental Health ("DMH") as an SVP. His first trial ended in a hung jury. At the second trial, the State called psychologist Expert 1 to testify. She testified that, to a reasonable degree of psychological certainty, W.N. possessed three disorders that formed a mental abnormality: (1) Antisocial Personality Disorder, (2) Other Specified Paraphilic Disorder, Non-consenting persons ("OSPD (non-consent)"), and (3) Exhibitionistic Disorder. While recognizing not every allegation led to a conviction, Expert 1 testified research on sexual predators indicates those who are arrested for sexual abuse crimes are more likely to commit future sex offenses. Expert 1 also testified she relied upon Static-99, an actuarial tool, to predict W.N.'s future risk of offending. He scored in the high-risk category, higher than 97% of the offenders scored on the instrument.

After the State rested its evidence, W.N. called Expert 2 to testify. She disputed all three of Expert 1's diagnoses. Particularly, she disagreed W.N. had OSPD (non-consent), which requires the patient to be sexually aroused by those who do not consent to sexual activities. Expert 2 partially based her disagreement with Expert 1 on her review of the child's statements and the

3

physical evidence in W.N.'s 1996 conviction for statutory rape and statutory sodomy. In an offer of proof, she argued the child's statements that W.N. engaged in penile and digital penetration of her vagina were "inconsistent" with the physical evidence because the police found no blood on her bedsheets and she bore no signs of forceful penetration. However, Expert 2 readily admitted she lacked the proper medical qualifications to testify as a medical expert. For example, when defense counsel questioned Expert 2 on whether a 13-year-old girl could have an intact hymen after penile and digital penetration by an adult male, Expert 2 responded, "I'm not a medical doctor, so I cannot answer that." However, Expert 2 agreed with Expert 1 that W.N. was at the highest-risk level for re-offending. She agreed he was four to five times more likely than the average sex offender to reoffend.

The circuit court excluded Expert 2's "inconsistency" testimony because, among other reasons, she readily admitted she lacked the qualifications to testify as a medical expert. The jury unanimously found W.N. is an SVP. The circuit court ordered W.N. committed to the DMH for control, care, and treatment under § 632.492.

This appeal follows.

**Standard of Review**

This Court reviews the circuit court's decision to exclude expert testimony for an abuse of discretion. *Marchosky v. St. Luke's Episcopal-Presbyterian Hosps.*, 363 S.W.3d 121, 125 (Mo. App. E.D. 2012). "The [circuit] court abuses its discretion when it improperly includes or excludes expert testimony contrary to its findings regarding the statutory elements." *Pyzyk v. Gateway Psychiatric Grp., LLC*, 694 S.W.3d 583, 593 (Mo. App. E.D. 2024) (quoting *Est. of Andress*, 624 S.W.3d 894, 901 (Mo. App. E.D. 2021)). An abuse of discretion occurs if a circuit court's ruling was "against the logic of the circumstances and … so arbitrary or unreasonable as to shock the

4

sense of justice and indicate a lack of careful consideration." *Kirk v. State*, 520 S.W.3d 443, 461 (Mo. banc 2017) (quoting *Elliott v. State*, 215 S.W.3d 88, 92 (Mo. banc 2007)). "If reasonable minds could differ about the propriety of the [circuit] court's decision, there is no abuse of discretion." *Dickerson v. Dickerson*, 580 S.W.3d 98, 107 (Mo. App. E.D. 2019).

## Discussion

*Point I: Exclusion of Expert Testimony*
*Party Positions*

W.N. argues the circuit court erred in excluding Expert 2's testimony that the child's statements and her sexual assault forensic examination were inconsistent. He asserts Expert 2 relied upon the results of the forensic examination and that, without this testimony, she could not explain her opinion that W.N. did not have OSPD (non-consent). The State argues the circuit court did not err because Expert 2 readily acknowledged she lacked the requisite medical knowledge to definitively conclude the child's testimony and the forensic examination were actually inconsistent.

*Analysis*

"An SVP's 'confinement is for the purpose of holding the person until his mental abnormality no longer causes him to be a threat to others, and he is permitted to be released on a showing that he is no longer dangerous.'" *Ray v. State*, 564 S.W.3d 771, 777 (Mo. App. W.D. 2018) (quoting *Holtcamp v. State*, 259 S.W.3d 537, 540 (Mo. banc 2008)). "The SVPA 'seeks, above all else, the protection of society against a particularly noxious threat: sexually violent predators.'" *Id*. Because the SVPA is civil in nature, admission of expert testimony is governed by § 490.065. *Murrell v. State*, 215 S.W.3d 96, 110 (Mo. banc 2007). "Since the amendment of Section 490.065, Missouri courts … evaluate: '(1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether the testimony is reliable.'" *State v. Suttles*, 581 S.W.3d 137,

147 (Mo. App. E.D. 2019) (quoting *Jones v. City of Kansas City*, 569 S.W.3d 42, 54 (Mo. App. W.D. 2019) (*overruled on other grounds by Wilson v. City of Kansas City*, 598 S.W.3d 888, 896 (Mo. banc 2020)). "Under Section 490.065.2, an expert is qualified by 'knowledge, skill, experience, training, or education.'" *Id*. (quoting § 490.065.2(1)).

"In general, expert testimony is appropriate when the witness has knowledge or skill in an area about which the jury lacks common knowledge or experience." *State v. Ford*, 454 S.W.3d 407, 414 (Mo. App. E.D. 2015). "Expert testimony is proper 'if the subject is one with which lay jurors are not likely to be conversant.'" *Id*. (quoting *State v. Patton*, 419 S.W.3d 125, 131 (Mo. App. E.D. 2013)). If a subject is one with which jurors are not likely to be conversant, a lay witness is not permitted to testify about it because the jury, without the explanatory testimony, would be incapable of drawing a proper conclusion from the facts in evidence. *Id*. at 415.

The question before us is whether Expert 2 can conclude, within her area of expertise, the 1996 child victim's description of her penile and digital penetration is "inconsistent" with the physical evidence. W.N. argues while Expert 2 was not a medical expert and could not opine as to whether the hymen could have been intact, she could testify that a lack of tearing, laceration, bleeding, or swelling of the vagina was "inconsistent" with the child's testimony W.N. sexually assaulted her. We disagree.

This Court has already held a mental health expert who admits they lack medical expertise cannot testify as a medical expert. *Childs v. Williams*, 825 S.W.2d 4 (Mo. App. E.D. 1992). In *Childs*, the plaintiff's psychologist urged her employer to transfer her to a less stressful position. *Id*. at 7. When the employer instead demoted her, the plaintiff sued the psychologist for intentional infliction of emotional distress. *Id*. at 10. This Court explained to prove a claim for intentional infliction of emotional distress where no physical injury has occurred, plaintiffs must prove

"'emotional distress or mental injury' which 'must be medically diagnosable and must be of sufficient severity so as to be medically significant.'" *Id*. (quoting *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–73 (Mo. banc 1982)). This element can be proven only with expert medical testimony. *Id*. The plaintiff offered a psychologist's testimony to prove this element. *Id*. The circuit court excluded the psychologist's testimony on medical matters because he admitted he lacked the necessary medical knowledge to testify as a medical expert. *Id*. While this Court acknowledged "there is overlap between the sciences of psychology and psychiatric medicine," the psychologist's "admitted inability" to testify to matters of medical certainty and significance "recognizes there are substantial differences between the two disciplines." *Id*. at 10–11. "On the facts of this case, it is unnecessary for us to rule definitively that psychologists can never testify on matters of medicine. We hold only that [the psychologist] conceded his own inability to testify as a medical expert witness." *Id*. at 11. Accordingly, this Court held the circuit court did not abuse its discretion in excluding the psychologist's testimony. *Id*.

Here, like in *Childs*, this Court need not decide whether Expert 2 was qualified as a medical expert because she admitted she lacked the necessary medical knowledge. Expert 2 disputed Expert 1's diagnosis of OSPD (non-consent) because that disorder requires the patient to be sexually aroused by non-consenting partners. In the offer of proof, Expert 2 testified the records from the 1996 statutory rape and statutory sodomy convictions were too ambiguous to use as evidence W.N. was sexually aroused by non-consenting partners. Specifically, the child told police she suffered digital penetration with three fingers and 20 minutes of penile penetration. In addition, she said she sustained abdominal pain, pelvic pain, and bleeding. Yet, the bedsheets recovered by the police contained no blood, and the child's forensic examination revealed no signs of injury or penetration. According to Expert 2, the child's hymen was still intact. Expert 2 proffered this

physical evidence was "inconsistent" with the child's testimony and, consequently, proved the records were ambiguous as to whether W.N. was sexually aroused by non-consenting partners.

However, when defense counsel questioned Expert 2 on this "inconsistency" finding regarding the hymen, Expert 2 readily admitted she lacked the necessary medical knowledge:

> [DEFENSE COUNSEL]: Would it be possible, in your professional opinion, to digitally penetrate a 13-year-old girl with three fingers, an adult male, without causing any damage to the hymen?
>
> [EXPERT 2]: I'm not a medical doctor, so I cannot answer that.
>
> [DEFENSE COUNSEL]: Do you think it is possible to have penile penetration for 20 minutes to a 13-year-old girl and still have the hymen intact?
>
> [EXPERT 2]: I will only be providing a layman's perspective, so I don't feel comfortable answering that.

Determining the likelihood that a child could be sexually assaulted and yet bear no physical signs of abuse is a subject with which a juror is not likely to be conversant. *See State v. Minor*, 648 S.W.3d 721, 735–36 (Mo. banc 2022) (child abuse pediatrician testified "an examination of the hymen generally will not reveal penetration because there should always be an opening to the hymen and it is composed of mucosal tissue, which heals quickly"); *State v. Werneke*, 958 S.W.2d 314, 316 (Mo. App. W.D. 1997) (doctor with special training in interviewing and examining sexually abused children considered an examination without physical signs of abuse "not surprising" and found behavioral indicators "very consistent" with sexual abuse); *State v. Foster*, 244 S.W.3d 800, 802 (Mo. App. S.D. 2008) (expert in examining sexually abused children testified "90-95% of his exams involve sexual abuse allegations, but he [found] physical evidence less than 5% of the time"); *State v. Heckenlively*, 83 S.W.3d 560, 563 (Mo. App. W.D. 2002) (pediatric nurse practitioner described the finding of no abnormalities during examination "could be consistent with either the presence or absence of sexual abuse"). These cases demonstrate a finding

the child's statements and the physical evidence are "inconsistent" is itself a medical conclusion requiring medical expertise. These cases further demonstrate a negative examination is not necessarily inconsistent with sexual assault.

On the facts of this case, this Court need not definitively rule that a mental health expert can never testify on matters of medicine. We hold only that Expert 2 conceded she lacked the necessary medical knowledge to testify as a medical expert witness.[2]

Accordingly, the circuit court did not abuse its discretion in excluding Expert 2's testimony regarding any "inconsistency" between the 1996 victim's description and the physical evidence of sexual assault. Point I is denied.

### Conclusion

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Renée Hardin-Tammons, J. concur.

---

[2] W.N. relies upon *Whitnell v. State*, 129 S.W.3d 409 (Mo. App. E.D. 2004) to argue Expert 2 should have been permitted to testify about the child's alleged "inconsistencies." In *Whitnell*, this Court held it was not an abuse of discretion for the circuit court to allow an expert to relay certain hearsay statements he relied upon in making his conclusions to the jury. *Id*. at 417–20. *Whitnell* is distinguishable because the disputed piece of evidence in that case was a hearsay statement, not expert opinion testimony. Section 490.065.3 does allow for experts to rely upon otherwise inadmissible hearsay. *See Byers v. Cheng*, 238 S.W.3d 717, 729 (Mo. App. E.D. 2007). However, W.N. has provided no authority that an expert may opine on subjects they admit they are not qualified to give. *Whitnell* is thus distinguishable.